CITY OF ANCHORAGE, Respondent.

v.

CITY OF ANCHORAGE, Respondents.

No. 2624.

Supreme Court of Alaska.

Jan. 16, 1976.

Bruce A. Bookman, Anchorage, for Area Dispatch and James Woodard.

Kenneth Norman, Asst. Borough Atty., Gary Thurlow, Borough Atty., Anchorage, for Greater Anchorage Area Borough.

Donald M. Johnson, Asst. City Atty., John R. Spencer, City Atty., Anchorage, for respondent.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

OPINION

ERWIN, Justice.

Referendum is a procedure whereby the electorate directly votes on whether to repeal existing law. To place a referendum on the ballot, a percentage or particular number of the electorate must sign a petition for referendum. This petition for review asks us to determine whether the percentage of the electorate required for initiation of a referendum petition pursuant to § 2.04.310 of the Municipal Code of the City of Anchorage, namely 25 percent, or the general Alaska provision for signatures of 15 percent of the electorate, as set forth in Alaska's statutes, is controlling when the referendum seeks to repeal a city ordinance.

Area Dispatch, Inc., and its president and general manager, James Woodard, operate a taxicab company unlicensed by the City of Anchorage. On May 27, 1975, the city council of the City of Anchorage en-

acted ordinance no. 14–75, which amended the Municipal Code to read

E. "Operate" means picking up, transporting or discharging passengers for hire or charter within the city. Anchorage, Alaska, Code § 6.64.010 (1975). This ordinance prohibits the operation of taxicabs within the city limits without the issuance of city permits. Prior to the enactment of the city ordinance, petitioners were permitted to transport or discharge passengers within the city.

On June 27, 1975, within the 30-day period set forth by the city charter to suspend the operation of an ordinance, petitioners filed a referendum petition calling for the repeal of ordinance no. 14–75. In reliance on state law rather than the city ordinance, the petition contained the signatures of 15 percent of the city voters in the last general election. The City of Anchorage refused to certify the petition, stating the city code required the signatures of 25 percent of those voting in the last general election. Petitioners' motion for a preliminary injunction to suspend the immediate operation of the ordinance was denied on August 13, 1975. This petition followed.[1]

Respondent contends that Anchorage as a home rule city is not specifically prohibited by state law from providing referendum procedures by ordinance, and thus the ordinance requiring the signatures of 25 percent of the voters who participated at the last general election is valid.[2] Such a position requires some examination of the question of home rule powers under Alaskan law.

■ Article X, § 11, of the Alaska Constitution provides that home rule cities "may exercise all legislative power not prohibited by law or charter." Numerous court opinions[3] and commentators[4] have explained that a municipal ordinance of a home rule municipality is not invalid because it is inconsistent or in conflict with a state statute. The question of validity of the conflicting ordinance rests on whether the exercise of the authority has been prohibited to home rule municipalities. "The prohibition must be either by express terms or by implication such as where the statute and ordinance are so substantially irreconcilable that one cannot be given its substantive effect if the other is to be accorded the weight of law."[5]

■ There is no prohibition in the case at bar, for AS 29.13.050[6] provides that a home rule charter may not require an initiative or referendum petition to have a number of signatures greater than 25 percent of the total votes cast at the last regular municipal election. Clearly, § 2.04.310[7] did not exceed the 25 percent figure, and

---

1. The enforcement of Ordinance No. 14–75 was stayed by Justice Erwin acting as a single justice under the provisions of Appellate Rule 37 pending a decision on the petition by the entire court.

2. Section 2.04.310 of the Anchorage Code of Ordinances provides:

   . . . a referendum may be had on any legislation passed by the city council, when a petition shall be presented to the city manager signed by a number of qualified electors residing within the city, equal to the twenty-five percent of the total number of votes cast at the next preceding general election.

3. All the cases are discussed in *Jefferson v. State*, 527 P.2d 37, 41–44 (Alaska 1974).

4. Sharp, Home Rule in Alaska: A Clash Between the Constitution and the Court, 3 UCLA–Alaska Law Review 1 (1973); Comment, Delineation of the Powers of the Alaska Home Rule City: The Need for a Beginning, 8 Alaska L.J. 232 (1970); Fischer, Alaska's Constitutional Convention, 116–124 (University of Alaska Press 1975).

5. *Jefferson v. State, supra* at 43.

6. AS 29.13.050 provides:

   (a) Municipal charters shall provide the procedures for the initiative and referendum.

   (b) A charter may not require an initiative or referendum petition to have a number of signatures greater than 25 per cent of the total votes cast at the last regular municipal election.

   (c) A charter may not permit the initiative and referendum to be used for a purpose prohibited by § 7, art. XI of the state constitution.

7. The ordinance required that a petition be signed by 25 percent of the voters at the last general election; see footnote 2.

thus there is no statutory prohibition to the enactment of the city ordinance on referendums.

■ This does not end the inquiry, however, for the home rule city must also comply with the terms of its charter in enacting ordinances.[8] Section 4.6 of the Anchorage City Charter provides:

A code provision may be initiated or a referendum may be had on any act of the council in the manner and subject to the limitations set forth by law.

Section 1.5(g) of the Anchorage City Charter defines the phrase "by law" to denote "applicable federal law, the Constitution and statutes of Alaska, the applicable common law, and this [the] charter." By its terms it does not include further ordinances of the City of Anchorage.

Thus the only applicable "law" referred to by the charter on the subject of referendums is found in Section 29.28 of the Alaska Statutes. Specifically, AS 29.28.070 (b)(2)[9] provides for a referendum election where the petition contains names of voters equal to 15 percent of the total number of votes cast in the last general election where the city has more than 7,500 persons.[10]

Anchorage Municipal Code § 2.04.310, which requires the signatures of 25 percent of the total number of voters before an election can be held, thus conflicts with the Anchorage City Charter as the Charter incorporates state provisions on referendum in city elections. The ordinance is thus invalid.

The decision of the superior court is reversed, and this case is remanded with instruction to enter a permanent injunction prohibiting the enforcement of ordinance no. 14–75 until such has been submitted to a proper referendum election.

BOOCHEVER, Chief Justice, with whom RABINOWITZ, Justice, joins, concurring.

I concur in the opinion but find that I cannot agree with the disposition of the argument advanced by the City of Anchorage that § 4.6 of the Home Rule Charter, passed in October of 1959, incorporates by reference the initiative requirements in existence at that time.[1] Chapter 187 of SLA 1959 required signatures equal to 25 percent of the total number of votes cast in the last general election.

The majority contends that § 6 of Chapter 187 specifically excludes Home Rule Charter cities from its terms so that until Chapter 187 was amended by Chapter 118, SLA 1972, requiring signatures of only 15 percent of the votes cast, there were no referendum requirements incorporated by reference.

---

8. Alaska Const. Art. X, § 7. *See* AS 29.08.-010.

9. AS 29.28.070 reads, in part, as follows:

. . . . .

(b) Every petition for either the initiative or referendum in the government of a municipality shall be signed by a number of qualified voters residing within the territorial limits of the municipality . . . equal to the following per cent of the total number of votes cast at the last general election in the city . . . or special election called for the purpose of electing city . . . officers:

. . . . .

(2) 15 per cent, when a city or borough has 7,500 persons or more.

10. The City of Anchorage argues that § 4.6 of the Home Rule Charter, passed in October of 1959, incorporates by reference the initiative requirements in existence at that time as found in Chapter 187, SLA 1959. Chapter 187 required signatures equal to 25 percent of the total number of votes cast in the last general election. The flaw in this argument, however, is found in § 6 of Chapter 187. Section 6 specifically excludes Home Rule Charter cities from its terms; therefore the initiative requirements cannot be incorporated by reference. The City does not argue that incorporation of a future state statute concerning initiatives was invalid, and we do not here decide such a question.

1. *See* Note 10 of the majority opinion.

Section 6(a) of Chapter 187, SLA 1959 specified:

The provisions of this Act shall not apply to Home Rule Charter Cities and Boroughs except as hereafter provided:

(a) The initiative and referendum shall be provided for in the Charter of Home Rule Charter Cities and Boroughs subject to the restrictions of Section 7, Article XI of the Alaska Constitution.

I cannot read this section as prohibiting a home rule city from adopting by reference the referendum requirements of state law. The Anchorage charter did this by stating that "A referendum be had on any act of the council in the manner and subject to the limitations set forth by law".[2]

Section 6 of Chapter 187, prohibiting the application of its provisions to a Home Rule City, contained an exception for Home Rule Cities whose charters provide for a referendum procedure. The Anchorage charter recognized the right of referendum but did not establish procedures implementing that right except by reference to the manner "set forth by law". Thus, I conclude that the charter incorporated the state statutory procedures relating to referendums. This conclusion is reinforced by the fact that "law" as defined in the charter includes state statutes.

Having reached that conclusion, it is necessary to resolve the issue of whether the incorporation by reference applies only to the state law of 1959 when the charter provision was enacted, or whether it includes amendments adopted thereafter. The 1972 amendment specified that signatures equaling 15 percent of the votes would be required in a city or borough of 7,500 persons or more [3] rather than 25 percent as required by the 1959 law. Generally, there are two types of reference statutes, specific and general. If there is reference to a specific statute by its title or section number, the reference incorporates the provisions as of the time of adoption without subsequent amendments unless the legislature has expressly or by strong implication shown a contrary intention. On the other hand, when there is adoption by general reference to the law on a subject, it will be considered as including all the amendments and modifications of the law subsequent to the time the reference statute was enacted.[4]

The provision of the Anchorage Charter on referendums contains a general reference to "the manner and subject to the limitations set forth by law" and does not refer to a particular act or section thereof. Accordingly, I agree with the result reached by the majority, namely that the reference must be construed as applying to the 1972 amendment to Chapter 187 whereby the percentage of signatures was reduced to 15 percent.[5]

2. Section 4.6, Anchorage City Charter.

3. AS 29.28.070(b)(2).

4. 2 Sutherland, Statutory Construction § 5207, pp. 550–51 (3rd ed. 1943); *Carruba v. Meeks*, 274 Ala. 714, 150 So.2d 195 (1963); *Campbell v. Hunt*, 115 Ga.App. 682, 155 S.E.2d 682 (1965); *State v. District Court in and for Delaware County*, 253 Iowa 903, 114 N.W.2d 317 (1962); *Dabney v. Hooker*, 121 Okl. 193, 249 P. 381 (1926); *Union Cemetery v. City of Milwaukee*, 13 Wis.2d 64, 108 N.W.2d 180 (1961).

5. Like the majority, I would not reach the question pertaining to a municipal corporation's delegation of its legislative authority to future actions of another legislative body for the reason that that issue was not briefed or argued. *See* A. Doldervaart, "Legislation by Reference—a Statutory Jungle", 38 Iowa L.Rev. 705, 706–24 (1953).