Lorn SIMPSON, Appellant,

v.

MUNICIPALITY OF ANCHORAGE, Appellee.

Douglas W. JONES, Appellant,

v.

MUNICIPALITY OF ANCHORAGE, Appellee.

Brantley McKNIGHT, Appellant,

v.

MUNICIPALITY OF ANCHORAGE, Appellee.

Nos. 4945, 4946 and 5288.

Court of Appeals of Alaska.

Nov. 12, 1981.

M. Gregory Oczkus, Kay, Christie, Fuld, Saville & Coffey, Anchorage, for appellants Simpson and Jones.

Karl L. Walter, Jr., Benkert & Walter, Anchorage, for appellant McKnight.

James F. Wolf, Municipal Prosecutor, and Theodore D. Berns, Municipal Atty., for appellee.

## OPINION

Before BRYNER, C. J., COATS, J., and SCHULZ, Superior Court Judge.*

BRYNER, Chief Judge.

These consolidated appeals raise a number of statutory and constitutional challenges to former Anchorage Municipal Ordinance (AMO) 9.28.030,[1] which created a prohibition against driving with a blood alcohol level of .10 percent or more.

Appellant Lorn Simpson, Jr., was arrested on April 24, 1978, and charged by the Municipality of Anchorage in a two count complaint with driving under the influence of intoxicating liquor (hereinafter drunk driving) in violation of AMO 9.20.020 and with violating the Municipality's .10 percent ordinance, AMO 9.28.030. Simpson was tried by a jury and acquitted of drunk driving but convicted of violating the .10 percent ordinance. On appeal to the Superior Court, Simpson's conviction was affirmed. Thereafter, he brought this appeal.

Appellants Douglas W. Jones and Brantley J. McKnight were arrested in unrelated incidents and separately charged by the municipality in similar two count complaints with drunk driving and .10 percent ordinance violations. After unsuccessful challenges to the validity of the .10 percent ordinance, each appellant entered into a negotiated agreement to enter a plea of *nolo contendere* to the .10 percent violation, reserving the right to appeal the denial of their pretrial challenges to AMO 9.28.030. After being sentenced, appellants took appeals to the superior court, where their convictions were affirmed; these appeals followed. Because they raised similar challenges to the validity of AMO 9.28.030, the cases of appellants Simpson, Jones and McKnight have been consolidated on appeal from the separate affirmances entered by the superior court.

All three appellants raise the contention that AMO 9.28.030, the Municipality of Anchorage's .10 percent ordinance, must be declared invalid because it was inconsistent with provisions of the state's statutes prohibiting operating a motor vehicle under the influence of alcohol.

Under well-established Alaska law, mere inconsistency between an ordinance of a home rule city and a state statute will not ordinarily suffice to render the ordinance invalid. Home rule cities in Alaska have been vested with broad legislative authority by the terms of article X, section 11 of the Alaska Constitution, which specifically pro-

---

* Thomas E. Schulz, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16, of the Constitution of Alaska.

1. AMO 9.28.030 was repealed by the municipality in 1980. Its provisions were reenacted under a different section number. For the sake of economy, the ordinance will be referred to as AMO 9.28.030 instead of "former" AMO 9.28.-030. Similarly, many of the state statutes discussed in this opinion have been amended since the time of the appellants' arrests. Citations to provisions of state law in this opinion are meant to refer to the provisions as they existed at the time of appellants' arrests, unless otherwise specified.

vides that "[a] home rule borough or city may exercise all legislative powers not prohibited by law or by charter."[2]

■ It has consistently been held that this constitutional provision was adopted in order to abrogate traditional restrictions on the exercise of local legislative authority.[3] However, the legislative powers of home rule municipalities are not boundless:

[T]o say that home rule powers are intended to be broadly applied in Alaska is not to say that they are intended to be pre-eminent. The constitution's authors did not intend to create 'city states with mini-legislatures.' They wrote into art. X, § 11 the limitation of municipal authority 'not prohibited by law or charter.' The test we derive from Alaska's constitutional provisions is one of prohibition, rather than traditional tests such as statewide versus local concern. A municipal ordinance is not necessarily invalid in Alaska because it is inconsistent or in conflict with a state statute. The question rests on whether the exercise of authority has been prohibited to municipalities. The prohibition must be either by express terms or by implication such as where the statute and ordinance are so substantially irreconcilable that one cannot be given its substantive effect if the other is to be accorded the weight of law.

*Jefferson v. State*, 527 P.2d 37 at 43 (footnotes omitted).

■ In the case at bar, the municipality's legislative authority was limited by the express terms of state legislation applicable to all local ordinances regulating the operation of motor vehicles. AS 28.01.010 provides in relevant part:

*Provisions uniform throughout the state.* (a) The provisions of this title and the regulations promulgated under this title are applicable within all municipalities of this state. No municipality may enact an ordinance which is inconsistent with the provisions of this title or the regulations promulgated under this title . . . .[4]

Thus, although inconsistency with state law is not normally the gauge for determining validity of a local ordinance in Alaska, under the express terms of AS 28.01.010(a) it is clear that inconsistency is the standard that governs here.

■ The parties here are in agreement that, in deciding the issue of inconsistency under AS 28.01.010(a), our consideration in the present case cannot properly be restricted to comparison of the state's drunk driving statute, AS 28.35.030, with the municipality's .10 percent ordinance, AMO 9.28.-030. Instead, in order to determine the issue of inconsistency, we must consider the totality of the legislative framework within which the municipal ordinance and state statute are included.

At the time appellants were arrested, AS 28.35.030 provided, in pertinent part:

*Driving while under the influence of intoxicating liquors or drugs.* (a) A person who, while under the influence of intoxicating liquor . . . operates or drives an automobile, motorcycle or other motor vehicle in the state, upon conviction, is punishable by a fine of not more than $1,000, or by imprisonment . . . or by both . . . .

Two statutory provisions complemented this section. AS 28.35.031 created the concept of implied consent, providing:

*Implied Consent.* A person who operates or drives a motor vehicle in this state shall be considered to have given consent to a chemical test or tests of his breath for the purpose of determining the alcoholic content of his blood if lawfully arrested for an offense arising out of acts alleged to have been committed while the

---

**2.** Article X, section 1, of the Alaska Constitution is also relevant, providing, in pertinent part: "A liberal construction shall be given to the powers of local government units."

**3.** *See, e. g., Area Dispatch, Inc. v. City of Anchorage*, 544 P.2d 1024, 1025–27 (Alaska 1976); *Jefferson v. State*, 527 P.2d 37, 42–43 (Alaska 1974); *Rubey v. City of Fairbanks*, 456 P.2d 470, 475 (Alaska 1969).

**4.** The October 15, 1978, amendment to AS 28.-01.010 substituted "adopted" for "promulgated" throughout subsection (a); this amendment is applicable only to Brantley McKnight's appeal.

person was operating or driving a motor vehicle while under the influence of intoxicating liquor. The test or tests shall be administered at the direction of a law enforcement officer who has reasonable grounds to believe that the person was operating or driving a motor vehicle in this state while under the influence of intoxicating liquor.

Additionally, under AS 28.35.033, presumptions were created and made applicable to the results of breathalyzer tests obtained by implied consent. AS 28.35.-033(a) provided:

*Chemical analysis of blood.* (a) Upon the trial of a civil or criminal action or proceeding arising out of acts alleged to have been committed by a person while operating a motor vehicle under the influence of intoxicating liquor, the amount of alcohol in the person's blood at the time alleged, as shown by chemical analysis of the person's breath, shall give rise to the following presumptions:

(1) If there was 0.05 per cent or less by weight of alcohol in the person's blood, it shall be presumed that the person was not under the influence of intoxicating liquor.

(2) If there was in excess of 0.05 per cent but less than 0.10 per cent by weight of alcohol in the person's blood, that fact does not give rise to any presumption that the person was or was not under the influence of intoxicating liquor, but that fact may be considered with other competent evidence in determining whether the person was under the influence of intoxicating liquor.

(3) If there was 0.10 per cent or more by weight of alcohol in the person's blood, it shall be presumed that the person was under the influence of intoxicating liquor.

The presumptions established by AS 28.35.-033(a) were not, however, intended to be conclusive. The intent of the legislature in this regard was expressly stated in AS 28.-35.033(c), which provided:

(c) The provisions of (a) of this section may not be construed to limit the intro-

duction of any other competent evidence bearing upon the question of whether the person was or was not under the influence of intoxicating liquor.

Motor vehicle ordinances adopted by the Municipality of Anchorage contained provisions that were in substance identical to the statutory framework contained in AS 28.-35.030–033.[5] In addition to ordinances paralleling the state's statutory framework relating to operation of a motor vehicle while under the influence of intoxicating liquor, the municipality separately enacted former AMO 9.28.030, which provided, in pertinent part:

*Driving with 0.10% or greater blood alcohol.*

A. It shall be unlawful for any person to operate, drive or be in actual physical control of an automobile, motorcycle or other motor vehicle in the municipality at such time as the alcohol content of his blood, by weight, is 0.10% or greater as determined by a test of his blood, breath or urine.

By contrast to AS 28.35.030–033 and corresponding municipal ordinances, the municipality's .10 percent ordinance sought to impose criminal sanctions against persons who drove after consuming alcohol on the sole basis of the quantity of alcohol consumed and without regard to the existence or lack of existence of any actual influence or impairment in driving related to alcohol consumption.

The focal point of contention on the issue of inconsistency under AS 28.01.010(a) in this case is, thus, whether the municipality's effort to impose criminal sanctions against drivers who consume alcohol on the sole basis of the quantity of alcohol in their blood was inconsistent with the state's statutory framework for drunk driving, under which the crucial element for imposition of criminal penalties was the existence of actual influence or impairment.

Appellants, on the one hand, argue that the municipality, in enacting AMO 9.28.030, in effect created a law imposing criminal penalties for drunk driving based entirely

---

**5.** AMO 9.28.020, .021 and .023 corresponded with AS 28.35.030, .031 and .033, respectively.

upon the quantity of alcohol in a person's blood. Appellants contend that, because applicable state law dealing with drunk driving required, as an essential element of the offense, a factual finding of actual impairment of a person's driving, the municipality's .10 percent ordinance must be deemed inconsistent with state law and in violation of the express limitations of AS 28.01.010(a).

The municipality argues, on the other hand, that AMO 9.28.030 simply created a new and distinct crime not specifically dealt with under state law. The municipality contends that it is within its powers as a home rule city to enact new prohibitions not specifically addressed in Alaska's Motor Vehicle Code provided that the offenses do not purport to render conduct permissible which the state's Motor Vehicle Code deems impermissible. Thus, the municipality reasons that there can be nothing inconsistent in its adoption of an ordinance imposing restrictions on driving after consumption of alcohol that are more stringent than the restrictions imposed under the state statutory scheme that related to drunk driving. The municipality contends that, to the contrary, because the basic purposes of its .10 percent ordinance—to promote traffic safety and to decrease the danger posed by drinking drivers—are identical with the basic purposes of the state's drunk driving provisions, the .10 percent ordinance must be considered consistent with provisions of state law.

An appropriate starting point for determining the issue of inconsistency under AS 28.01.010 is the common definition ascribed to the word "inconsistent." Black's Law Dictionary (5th ed. 1979) provides the following definition:

*Inconsistent.* Mutually repugnant or contradictory; contrary, the one to the other, so that both cannot stand, but the acceptance or establishment of the one implies the abrogation or abandonment of the other; . . . .

This definition must be considered in the context of the statute within which it appeared. Although there is no legislative history reflecting the origin of its exact language, AS 28.01.010(a) is similar in substance and purpose to the provisions of § 15–101 of the Uniform Vehicle Code Annotated (UVCA) adopted by the National Committee on Uniform Traffic Laws and Ordinances in 1962.[6] Former UVCA § 15–101 (1967) provided:

The provisions of chapters 10, 11, 12, 13 and 14 of this act shall be applicable and uniform throughout this State and in all political subdivisions and municipalities therein and no local authority shall enact or enforce any ordinance, rule or regulation in conflict with the provisions of such chapters unless expressly authorized herein. Local authorities may, however, adopt traffic regulations which are not in conflict with the provisions of such chapters. (Revised, 1962.)[7]

It is significant that the drafters of this section of the Uniform Vehicle Code gave emphasis to the purpose of achieving uniformity in traffic laws not only among the various states but also among the political subdivisions within each state.[8] The impor-

---

**6.** AS 28.01.010(a) was originally enacted in 1974. Ch. 91, § 1, SLA 1974. Its provisions were apparently drawn from and are similar to pre-existing legislation that prohibited the enactment of local ordinances conflicting with state laws regulating operation of motor vehicles. Ch. 157, § 1, SLA 1966, made applicable to home rule cities by Ch. 157, § 6, SLA 1966 (repealed 1972). *See Adkins v. Lester*, 530 P.2d 11, 14–15 & n.7 (Alaska 1974).

**7.** The 1962 version of UVCA § 15–101 was amended in 1968; in its amended form, § 15–101 went even further in restricting local legislative authority relating to the operation of motor vehicles, providing:

The provisions of chapters 10, 11, 12, 13 and 14 of this act shall be applicable and uniform throughout this state and in all political subdivisions and municipalities therein and no local authority shall enact or enforce any ordinance on a matter covered by the provisions of such chapters unless expressly authorized. (Revised 1968.)

UVCA § 15–101 at 188 (1969 Supp.).

**8.** *See* UVCA Appendix at 621–23 (1967); *see also* Historical Note, UVCA § 15–101 at 188–89 (1969 Supp.). In looking to the commentary to the Uniform Vehicle Code for the purpose of construing AS 28.01.010(a), we note that reliance upon the Uniform Vehicle Code was expressly contemplated by the Alaska Legislature. AS 28.01.010(g) states:

tance of both interstate and intrastate uniformity of traffic laws has similarly been underscored by other commentators.[9]

The fact that uniformity in Alaska's traffic laws was a specific goal of the drafters of AS 28.01.010 is, furthermore, evidenced by the heading given by the state legislature to this section: *"Provisions uniform throughout state."*[10] Accordingly, we conclude that the need for statewide uniformity of traffic laws was an essential concern of the drafters of AS 28.01.010, and that this purpose is reflected as a component of the provisions of AS 28.01.010(a) prohibiting municipalities from enacting local ordinances that are inconsistent with the Alaska Motor Vehicle Code. We believe that our review of the provisions of AMO 9.28.-030 must give deference to the legislature's intent to further statewide uniformity in traffic laws.

Additional guidance in resolving the issue of inconsistency presented in this case is provided by two decisions in which the Alaska Supreme Court considered the limitations on local legislative authority created by AS 28.01.010(a).

*Adkins v. Lester*, 530 P.2d 11, 13–15 (Alaska 1974), involved a state traffic regulation permitting drivers of authorized emergency vehicles to avoid the use of audible signals and warning lights in responding to emergency dispatches under certain circumstances, whereas a Fairbanks city ordinance required the use of audible signals at all times. The court noted that the Commission of Public Safety had been granted authority by the legislature to promulgate statewide traffic regulations, and that the legislature had expressly required that provisions of local ordinances regulating operation of motor vehicles be compatible with state law. The court went on to conclude that, under the circumstances, the city ordinance was in direct conflict with the state regulation and that, therefore, adoption of the ordinance was prohibited under state law.[11]

More recently, in *Cremer v. Anchorage*, 575 P.2d 306 (Alaska 1978), the court found that a statute which prohibited driving a motor vehicle on a public highway with a suspended license was not inconsistent with a municipal ordinance that was in substance identical to the state statute, but which extended its prohibitions to driving occurring anywhere within the municipality. In finding that the ordinance was not inconsistent with state law, the court in *Cremer* held:

> The word 'inconsistent' describes what reveals lack of uniformity in over-all purpose or design. The over-all purpose or design of AS 28.15.300(a) is to prohibit one from driving a motor vehicle while his license has been suspended or revoked.
>
> . . . .
>
> The over-all or basic purpose or design of the statute and the ordinance is the same: to prohibit the driving of a motor vehicle while one's license is suspended or revoked. In order to hold that the ordi-

(g) Regulations adopted under this title [the Alaska Motor Vehicle Code] shall, as far as practicable, conform to the recommendations of the current edition of the Uniform Vehicle Code adopted by the National Committee on Uniform Traffic Laws and Ordinances.

9. For example, the American Bar Association, in its Standards for Traffic Justice, § 1.2 (approved draft 1975) has provided: *"Uniformity.* Traffic regulations should be uniform as well as reasonable." The commentary to § 1.2 states, in pertinent part, that "[e]fforts toward uniformity of traffic regulations within a state and throughout the several states should continue." *See also,* E. Fisher and R. Raider, Vehicle Traffic Law, 22–25 (rev.ed.1974).

10. This heading was specifically enacted by the legislature as a part of AS 28.01.010 and was not simply added in the course of the codification process, a fact which we deem significant in assessing legislative intent. *See* Ch. 91, § 1, SLA 1974.

11. The state statute considered by the court in *Adkins,* which prohibited conflicts between municipal traffic ordinances and provisions of the Alaska Motor Vehicle Code, was a predecessor of AS 28.01.010(a). At the time *Adkins* was decided, that statute had been repealed and AS 28.01.010(a) had been newly adopted. In rendering its decision the *Adkins* court made specific reference to AS 28.01.010(a), noting that its provisions were substantially similar to those of the pre-existing law. 530 P.2d at 14–15 & n.7.

nance is prohibited by law, it would have to be found that it directly or indirectly impeded implementation of a statute which sought to further a specific statewide policy. Here the legislative prohibition is directed against an "inconsistency" between a local ordinance and a state statute relating to the driving of motor vehicles while one's license is suspended. The ordinance accomplishes the same object as the statute, and then a bit more by covering the driving in areas that are not public highways.

We do not believe that this slight discrepancy between the statute and the ordinance, i. e., the driving of motor vehicles on private property, is of such a nature that the exercise of municipal power has been directly or indirectly prohibited by legislative action.

575 P.2d at 307–08 (footnotes omitted). The court in *Cremer* specifically distinguished its holding from the conclusion reached in *Adkins v. Lester,* stating:

In *Adkins,* there was an apparent inconsistency between the ordinance and the state regulation—something which does not exist in this case. It can hardly be said here that by prohibiting the driving on public highways by one whose license has been suspended, the legislature intended, as a matter of policy, to permit such a person to drive on privately owned-property, such as the large parking lot involved in this case.

575 P.2d at 308 n.5.

■ The holding of the court in *Cremer* is especially helpful, for it articulates specific standards by which the issue of inconsistency under AS 28.01.010(a) may be evaluated. The court stated, first, that an ordinance could be deemed inconsistent only if it was "found that it directly or indirectly impeded implementation of a statute which sought to further a specific statewide policy." 575 P.2d at 307 (footnote omitted). Second, in distinguishing its holding from the holding of *Adkins v. Lester,* the court

indicated that an essential criterion of inconsistency under 28.01.010(a) is whether the ordinance in question seeks to proscribe conduct which, by statute, "the legislature intended, as a matter of policy, to permit . . . ." 575 P.2d at 308 n.5. From these statements we infer that, when the question of inconsistency under AS 28.01.010(a) is raised, the issue is not whether there is a mere discrepancy between state law and local ordinance; rather, the inquiry must focus on whether any discrepancy in the ordinance impedes or frustrates policy expressed by state law.[12]

While *Adkins* and *Cremer* provide substantial assistance in resolving the issue of inconsistency presented by this case, neither case is so factually similar to circumstances presented here as to be dispositive. We must thus consider whether the disparity between the statute and ordinance in the case before us falls closer to the type of discrepancy found to be inconsistent in *Adkins* or to the relatively minor difference held to be inconsequential in *Cremer.*

In considering this question, we reject at the outset the municipality's contention that its .10 percent ordinance creates a new offense that is entirely distinct from the provisions of former AS 28.35.030, which prohibited operation of a motor vehicle while under the influence of intoxicating liquor.

It cannot be disputed that the state's drunk driving laws and the city's .10 percent ordinance seek to control the same basic behavior: driving by persons who have consumed alcohol. Moreover, both the state statute and the municipal ordinance aim at achieving the same goal: to reduce the dangers posed by the drinking driver. Beyond the close similarities in subject matter and underlying policy, the municipality's .10 percent ordinance is functionally inseparable from the drunk driving statute. All three appellants were initially arrested not for violation of the .10 percent ordi-

---

12. This approach is essentially similar to the standard enunciated by the Alaska Supreme Court for determining whether or not, in the absence of express prohibitions against the exercise of local legislative authority, an ordi-

nance should be deemed impliedly prohibited when it conflicts with state law. *See, e. g., Jefferson v. State,* 527 P.2d 37, 43 (Alaska 1974). *See also City of Kodiak v. Jackson,* 584 P.2d 1130, 1132–33 (Alaska 1978).

nance, but for drunk driving. Indeed, it is difficult to conceive how a person could be arrested on probable cause for violation of the municipality's .10 percent ordinance in the absence of probable cause for arrest for drunk driving. Furthermore, the breathalyzer results obtained from the appellants in this case, which served as the basis for their convictions under the municipality's .10 percent ordinance, were obtained by implied consent.[13] Under the implied consent statute, AS 23.35.031, appellants could not properly have been required to submit to breathalyzer examinations unless "lawfully arrested for an offense arising out of acts alleged to have been committed while ... operating ... a motor vehicle while under the influence of intoxicating liquor."

Given all of the circumstances, we believe that it is entirely unrealistic to maintain that AMO 9.28.030, the municipality's .10 percent ordinance, cannot be inconsistent with state law because it creates a new offense, differing from and independent of drunk driving as defined by AS 28.35.030. Rather, it is apparent that the realistic effect of the .10 percent provision is to supplant the provisions of the state's drunk driving statutes in those cases where a person arrested for drunk driving submits to a breathalyzer test that yields results indicating a blood alcohol level of .10 percent or greater. While the provisions of AMO 9.28.030 unquestionably create a new offense, they must be deemed to constitute a partial substitute for the provisions of the state's drunk driving statutes. Because the ordinance sought to impose criminal penalties based on more stringent criteria than those provided for under state law, there is an obvious discrepancy between former AMO 9.28.030 and the provisions of the state's drunk driving statutes. The critical issue under *Cremer v. Anchorage* and *Adkins v. Lester* is whether this discrepancy

frustrated statewide policy relating to drunk driving.

Reading the provisions of AS 28.35.030, .031 and .033 together, we believe it to be evident that the state legislature addressed the problem of drinking drivers and concluded that a person who has consumed alcohol should be subjected to criminal sanctions for driving a motor vehicle when his driving is actually influenced or impaired by the alcohol consumed. Actual impairment of driving by alcohol forms the essential basis for imposition of the criminal sanctions provided for under AS 28.35.030. By establishing implied consent and enacting rebuttable presumptions for breathalyzer results, an objective, prima facie measure of actual impairment was created. Thus, the implied consent law and the statute dealing with breathalyzer presumptions were enacted to facilitate the process of determining whether a driver was actually impaired by alcohol that he had consumed.

It also seems apparent that the legislature established the standard of actual impairment of driving not only as a minimal standard for punishing drinking drivers, but as the exclusive standard. We cannot ignore the fact that AS 28.35.033(c) affirmatively provided for the right to introduce evidence bearing on the issue of actual impairment of a driver's ability due to consumption of alcohol, regardless of the result of the breathalyzer test obtained by implied consent. The express terms of AS 28.35.033(c) conferred upon persons charged with drunk driving the right to present relevant evidence to show that their driving remained unimpaired, even when breathalyzer tests exceeded the .10 percent presumptive level.

The municipality argues that the state legislature could not have intended to encourage driving by persons with blood alcohol levels of .10 percent or greater, and

13. The Municipality of Anchorage had its own ordinances dealing with implied consent and establishing presumptions for breathalyzer tests obtained by implied consent. AMO 9.28.-021, 9.28.023. However, the provisions of municipal ordinances dealing with implied consent and breathalyzer presumptions were substantially similar to their state corollaries, AS 28.-

35.031 and 28.35.033, respectively. Since these ordinances did not differ from provisions of state law, it is unnecessary for us to consider whether the breathalyzer results in this case were obtained under the state implied consent statute or the municipal implied consent ordinance.

that, therefore, the provisions of state law cannot logically be construed to preclude enactment of a more stringent ordinance such as AMO 9.28.030. The logic of the municipality's argument is flawed, for it makes the mistake of assuming that legislation which permits conduct necessarily encourages it.

Obviously, the legislature did not intend to encourage driving by persons with blood alcohol levels of .10 percent or greater. In fact, by assuring under AS 28.35.033(c) that the state could introduce independent proof of intoxication to secure a conviction for drunk driving regardless of the actual breathalyzer result, the legislature clearly sought to discourage driving by persons who had consumed any quantity of alcohol, even if it was insufficient to yield a breathalyzer result of .10 percent. Adopting a policy of punishing only those drivers who are actually impaired is a far cry from actively encouraging or endorsing driving after consuming alcohol. By enacting a statutory system under which a driver who has consumed alcohol was not subjected to punishment unless his driving was impaired, the legislature, at most, indicated that driving by persons who have consumed alcohol but are unimpaired would be tolerated as minimally acceptable. There is thus nothing irrational in finding that the legislature, as a matter of policy, did not want a more stringent standard imposed than the one that it adopted.

The appellants in this case were licensed by the state to exercise the privilege of driving within its borders. In exercising this privilege, they were entitled to rely on state law. We believe that a fair reading of the state law requires the conclusion that appellants were in effect assured that they could not properly be subjected to criminal sanctions for driving after consuming liquor—regardless of their blood alcohol level—if their driving was not actually impaired. If the appellants were not actually impaired by alcohol, it was permissible under state law for them to drive. Especially in light of the strong emphasis on the policy of statewide uniformity in traffic laws that is implicit in AS 28.01.010(a)'s prohibition against inconsistent local ordinances, we cannot say that appellants' right to rely on the provisions of the state's drunk driving statutes in making the decision to drive after consuming alcohol was either insignificant or insubstantial.[14]

Here, the municipality's .10 percent ordinance purported to regulate the same type of conduct as that regulated by state law. Under the terms of the ordinance, sanctions were imposed without regard to the standard of actual impairment, or "influence of intoxicating liquor", which was mandated by state law as the appropriate threshold for imposition of criminal sanctions against persons who drove after consuming alcohol. The provisions of AMO 9.28.030 effectively negated the rebuttable presumption expressly established by AS 28.35.033(a)(3) and abrogated appellants' right under AS 28.35.033(c) to present relevant evidence to show that their driving was not actually impaired by consumption of alcohol.[15] The

14. In a number of cases where no express statutory prohibition against conflicting ordinances by home rule cities existed, the Alaska Supreme Court has found local ordinances that were in conflict with state law to be impliedly prohibited because the court found statewide uniformity to be a significant purpose of the particular statute in question. *See, e. g., De Husson v. City of Anchorage*, 583 P.2d 791 (Alaska 1978); *Johnson v. City of Fairbanks*, 583 P.2d 181 (Alaska 1978); *Chugach Electric Association v. City of Anchorage*, 476 P.2d 115 (Alaska 1970). For a case from another jurisdiction analogous to the present case, *see City of Springfield v. Stovall*, 117 Ohio App. 203, 192 N.E.2d 72 (Ohio App.1962).

15. The municipality has cited various studies indicating that virtually all drivers are functionally impaired at blood alcohol levels of .10 percent or greater. On this basis, the municipality seeks to justify its .10 percent ordinance as being fully consistent with the state's requirement that actual impairment be demonstrated. We believe that the municipality's argument misses the point. We do not question the medical or scientific authorities relied upon by the municipality. This does not alter the fact that, at the time of appellants' arrests, the state legislature had enacted a statutory definition of drunk driving that expressly required acquittal of persons with blood alcohol levels in excess of .10 percent if their driving was not actually impaired. The state legislature had obviously not yet been persuaded that all driv-

effect of AMO 9.28.030 was thus to make impermissible conduct that was expressly permitted by state law.

It cannot be said here, as it was in *Cremer v. Anchorage,* 575 P.2d at 308, that the difference between AMO 9.28.030 and the provisions of state law amounted only to a "slight discrepancy", or that "[t]he ordinance accomplishes the same object as the statute, and then a bit more ...." AMO 9.28.030 diverged significantly from the state's statutory framework, in effect dispensing with the single most critical element of the offense of drunk driving—the element of actual impairment of driving ability by consumption of alcohol—as that offense was defined by AS 28.35.030.[16]

In summary, we believe that the existence of a substantial conflict between AMO 9.20.030 and the provisions of state law

relating to operating a motor vehicle under the influence of intoxicating liquor is apparent. AS 28.01.010(a) expressly prohibited the municipality from enacting any ordinance inconsistent with provisions of Alaska's Motor Vehicle Code, of which AS 28.-35.030–033 were a part. It is apparent that, if the provisions of AMO 9.28.030 were "to be accorded the weight of law", AS 28.35.033(c)'s assurance that a person arrested for drunk driving would have the right to present evidence tending to show that his driving was not actually influenced by alcohol, could not "be given its substantive effect." *Jefferson v. State,* 527 P.2d at 43. Similarly, the terms of AMO 9.28.030, if enforced, would render utterly superfluous the provisions of former AS 28.35.-033(a)(1) creating a rebuttable presumption of intoxication for breathalyzer tests showing a blood alcohol content of .10 percent or more.[17]

ers are impaired at blood alcohol levels of .10 percent or greater.

While we recognize the enormity of the problem posed by drinking drivers in Alaska and sympathize with the municipality's efforts to respond to this problem by enacting more stringent ordinances reasonably based on current scientific data, we are also constrained to recognize that, under the unequivocal terms of AS 28.01.010(a), in the area of motor vehicle regulation, it is not properly within the ambit of the municipality's powers to forge ahead with novel ordinances that are based on the municipality's conclusion that policies expressed in the Motor Vehicle Code are outdated.

**16.** The municipality also relies upon the language of *Cremer v. Anchorage,* 575 P.2d at 307, emphasizing that "[t]he over-all or basic purpose or design of the statute and the ordinance is the same...." The municipality argues that, since the overall purpose of its .10 percent ordinance—to curb the problems caused by drunk drivers—is the same as the overall purpose of the state's drunk driving statutes, the ordinance should be upheld under the *Cremer* case. The "over-all or basic purpose" language of *Cremer,* however, was specifically couched in terms of the similarity between the essential elements of the statute and ordinance considered in that case, and did not refer to the similarity of social policies furthered by the statute and the ordinance. We believe that it would be a mistake to expand the "over-all or basic purpose" language of *Cremer* to mean that any similarity of broad social policies furthered by an ordinance and a statute would automatically render the ordinance consistent with the statute under the meaning of AS 28.-01.010(a). Such an expansion would, in effect,

render the prohibition against inconsistency under AS 28.01.010(a) virtually meaningless, since, in any case where a local ordinance sought to impose more stringent restrictions than those imposed under the terms of the Motor Vehicle Code, it could always be argued that the "over-all or basic purpose" of the ordinance was to promote greater traffic safety and was thus the same as that of the Motor Vehicle Code. The "over-all or basic purpose" of the state's former drunk driving provisions was to prohibit driving by persons whose abilities were actually impaired by consumption of alcohol; by contrast, the purpose of the municipal ordinance was to make it unlawful for persons to drive after consuming a specified quantity of alcohol, without reference to its effect on the individual driver. Thus, we believe that there exists a significant difference in the "over-all or basic purpose" within the meaning of *Cremer v. Anchorage* between the ordinance and the provisions of state law involved in this case.

**17.** Evidence in support of the contention that the provisions of former AS 28.35.033(a)(3) are rendered superfluous under a legislative scheme making driving with a blood alcohol level of .10 percent or more the functional equivalent of operating a motor vehicle under the influence of intoxicating liquor can be found in the current provisions of the Alaska Statutes. When, during the 1980 legislative session, AS 28.35.030 was reenacted by the state legislature to incorporate driving with a blood alcohol level of .10 percent or more as a part of the definition of the offense of operating a motor vehicle under the influence of intoxicating liquor, the provisions of former AS 28.-35.033(a)(3) were simply deleted. *See* Ch. 129, § 13, SLA 1980.

■ We therefore conclude that AMO 9.28.030 was inconsistent with the provisions of AS 28.35.030–033, in violation of the express prohibitions of AS 28.01.010(a). For this reason, AMO 9.28.030 must be considered invalid unless that ordinance can be found to fall within the saving clause of AS 28.01.010(b), which provides, in pertinent part: "Notwithstanding (a) of this section, a municipality may enact necessary ordinances to meet specific local requirements."

■ The municipality presented no evidence below to establish that the provisions of AMO 9.28.030 may be justified under the savings clause of AS 28.01.010(b). It argued below and urges on appeal that judicial notice can be taken of the high incidence of alcohol-related traffic accidents in the Municipality of Anchorage. The municipality contends that the well-known magnitude of the problem caused by drinking drivers in Anchorage is, in itself, sufficient to support a finding that AMO 9.28.030 may be upheld as an ordinance necessary "to meet specific local requirements."

We cannot agree with the municipality's contention. The saving provisions of AS 28.01.010(b), by their express terms, require a twofold showing to be made before an ordinance inconsistent under AS 28.01.-010(a) can be upheld. First, it is incumbent upon the municipality to demonstrate the existence of a "specific local requirement". Second, the municipality must show that its ordinance was "necessary"—in other words, that the specific local problem could not be addressed in a manner consistent with the provisions of the Alaska Motor Vehicle Code. Neither showing has been made on the record in this case.

We can, as the municipality requests, take judicial notice of the fact that a great number of alcohol-related traffic accidents occur in the Municipality of Anchorage. However, a high incidence of alcohol-related traffic accidents in the Anchorage area cannot, standing alone, support a finding of a "specific local requirement." At the very least, in order to demonstrate the existence of a "specific local requirement" within the meaning of AS 28.01.010(b), it would be incumbent upon the municipality to demonstrate that the problem of drunk driving in Anchorage was disproportionately high in comparison with the extent of the problem throughout the state. No information has been called to our attention that would enable us, by judicial notice or otherwise, to make such a finding. We therefore conclude, on the basis of the record before us, that the validity of former AMO 9.28.030 cannot be sustained under AS 28.01.010(b).[18]

For the foregoing reasons, we hold that appellants' convictions under AMO 9.28.030 must be REVERSED.

COATS, J., dissents.

SINGLETON, J., not participating.

COATS, Judge, dissenting.

The Alaska Constitution provides broad powers for a home rule borough or city. It provides in Article X, Section 11 that "[a] home rule borough or city may exercise all legislative powers not prohibited by law or by charter." Furthermore, Article X, Section 1 provides that "A liberal construction shall be given to the powers of local government units." From these constitutional provisions I conclude that AS 28.01.010(a), which provides that a municipality may not enact an ordinance that is "inconsistent" with the state motor vehicle code or regulations, should be given a narrow reading. *Cremer v. Anchorage*, 575 P.2d 306 (Alaska 1978) and *Adkins v. Lester*, 530 P.2d 11 (Alaska 1974), seem to be consistent with this view. The *Adkins* case involved a direct conflict between a state traffic regulation and a municipal ordinance. The state traffic regulation specifically permitted the driver of an emergency vehicle to respond to an emergency call without using a red

18. Because the municipality did not seek to make any evidentiary showing in these cases to justify a finding that AMO 9.28.030 falls within the "specific local requirements" provisions of AS 28.01.010(b), our decision in these appeals does not foreclose the municipality from attempting to make such a showing in other cases involving convictions under AMO 9.28.-030. Given our holding on the issue of inconsistency, we need not consider the various constitutional arguments raised by the appellants.

light and siren when responding to a burglary in progress or other emergency when the use of the red light and siren might "prevent or hamper the apprehension or detection of a violator of a statute, ordinance or regulation." The city ordinance required an emergency vehicle responding to an emergency to use audible signals at all times. 530 P.2d at 14. The court held that the city ordinance was inconsistent with the state regulation and that the state regulation governed. The court said, "We therefore hold the Fairbanks city ordinance, to the extent it is in conflict with the state traffic regulations, constitutes an exercise of home rule power *expressly* prohibited by the legislature." 530 P.2d at 15 (emphasis in the original).

In *Cremer v. Anchorage*, 575 P.2d 306 (Alaska 1978), the defendant was convicted under an Anchorage ordinance of driving in a large, privately owned lot while his state operator's license was suspended. A state statute provided that a person could not drive while his operator's license was suspended "on a public highway in this state." The court held that it was permissible to convict Cremer, even though he was not driving on a highway, under a municipal ordinance which provided that a person could not drive a vehicle while his operator's license was suspended. The court held this ordinance was not inconsistent with the state statute. The court said, "In order to hold that the ordinance is prohibited by law, it would have to be found that it directly or indirectly impeded implementation of a statute which sought to further a specific statewide policy." 575 P.2d at 307 (footnote omitted).

Therefore, reading *Adkins, Cremer*, and the provisions of the Alaska Constitution, I conclude that any inconsistency between AMO 9.28.030 and the state motor vehicle statutes must be a significant conflict in order to invalidate the city ordinance. I do not see such a conflict in this case. A state statute in effect at the time these cases arose, AS 28.35.033(a), provided that a person with a .10 blood alcohol reading was presumed to be under the influence of intoxicating liquor. Although it was not in effect at the time these cases arose, AS 28.35.030(a)(2) now provides, similarly to AMO 9.28.030, that "[a] person commits the crime of driving while intoxicated if he operates or drives a motor vehicle when there is 0.10 percent or more by weight of alcohol in his blood . . . ." Given this statutory background, I see no reason to conclude that the state has any policy that is furthered by requiring the city to prove that a person is impaired at a .10 blood level before he can be convicted of driving while intoxicated. I perceive this case as being similar to *Cremer*, where the city ordinance merely carried state policy one step further.[1] I recognize that there is a strong need for uniformity in traffic regulation. I also believe this is a close and difficult issue. However, because of my reading of the Alaska Constitution and the Alaska cases, and because I do not see a significant conflict between the ordinance and any policy of the state motor vehicle code, I respectfully dissent.[2]

1. In *Cremer v. Anchorage*, 575 P.2d at 308, the court approved the city ordinance making it illegal to drive with a suspended license in places other than a public highway, stating:

   The ordinance accomplishes the same object as the statute, and then a bit more by covering the driving in areas that are not public highways.

2. Since the majority opinion disposes of this case by deciding this issue in favor of the appellants, I do not address the other issues raised in these appeals.