Roger KEEL, Appellant,

v.

STATE of Alaska, Appellee.

No. 4408.

Supreme Court of Alaska.

April 18, 1980.

---

Michael W. Sharon, Cole, Hartig, Rhodes, Norman & Mahoney, Anchorage, for appellant.

William L. Mackey, Dist. Atty., Kodiak, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

## OPINION

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

BOOCHEVER, Justice.

Roger Keel was convicted by a district court jury in Kodiak of operating a motor vehicle while intoxicated, in violation of AS 28.35.030.[1] The results of a breathalyzer test, administered to him shortly after his arrest, were admitted as evidence against him. Keel's conviction was affirmed by the superior court. On this appeal he mounts a multifaceted attack on the breathalyzer test.

Keel was stopped at about 1:00 a. m. on December 16, 1977, by Kodiak police, after he had run a stop sign. He had been traveling at fifteen to twenty miles per hour. The police followed Keel, who was driving in the middle of the snow-covered road. He slowed down but did not stop when the police turned on their flashing light, and halted only when they used their siren. Keel at first refused to leave his vehicle; when he finally did, police officer Culbertson observed that Keel's eyes were watery and his balance was poor. After performing several field sobriety tests, Keel admitted he had had four beers.[2] Culbertson arrested him and took him to the stationhouse.

At the stationhouse, Keel was read an implied consent form which, if signed, allows a breathalyzer test to be administered. Keel signed the form and agreed to take the test, saying that he knew how to "beat that machine." He did, however, try to stall the test by apparently faking a gastric attack. The test indicated that Keel had a blood alcohol content of .18 percent.[3] He was also videotaped at the station.

---

1. AS 28.35.030 states in part:
   *Driving while under the influence of intoxicating liquor or drugs.* (a) A person who, while under the influence of intoxicating liquor, depressant, hallucinogenic or stimulant drugs or narcotic drugs as defined in AS 17.10.230(13) and AS 17.12.150(3) operates or drives an automobile, motorcycle or other motor vehicle in the state, upon conviction, is punishable by a fine of not more than $1,000, or by imprisonment for not more than one year, or by both and the court shall impose a minimum sentence of imprisonment of not less than three consecutive days.

2. Keel testified, however, that he was not drunk, and explained that his failure to obey the stop sign and his driving in the middle of the road were due to the bad road conditions.

3. AS 28.35.033(a) reads:
   Upon the trial of a civil or criminal action or proceeding arising out of acts alleged to have been committed by a person while operating a motor vehicle under the influence of intoxicating liquor, the amount of alcohol in the person's blood at the time alleged, as shown by chemical analysis of the person's breath, shall give rise to the following presumptions:
   (1) If there was 0.05 per cent or less by weight of alcohol in the person's blood, it shall be presumed that the person was not under the influence of intoxicating liquor.
   (2) If there was in excess of 0.05 per cent but less than 0.10 per cent by weight of alcohol in the person's blood, that fact does not give rise to any presumption that the person was or was not under the influence of

At his trial, the court cut off Keel's efforts to cross-examine Culbertson, who administered the test, regarding the functioning of the breathalyzer and possible sources of error in its readings. Additionally, Keel objected repeatedly to the admission of the breathalyzer test results on the ground that the proper foundation for their admission had not been laid. The court overruled these objections. The jury was instructed on the statutory presumption of intoxication, based on the breathalyzer reading.[4] It found Keel guilty as charged.

■■■ Keel claims that the court improperly restricted his cross-examination of Culbertson. Cross-examination is a basic right of the defendant, not to be lightly curtailed. *Salazar v. State*, 559 P.2d 66, 78 (Alaska 1976); *McGinnis v. Stevens*, 543 P.2d 1221, 1231 (Alaska 1975). Keel was seeking through his attempted questioning of Culbertson to raise doubts in the jury's mind regarding the reliability of the breathalyzer test.[5] This is clearly a valid objective of cross-examination.[6]

The trial court seemingly relied on the last sentence of AS 28.35.033(d) in sustaining the state's objection to Keel's line of inquiry.[7] That statute, however, merely defines the elements that must be proved before breathalyzer test results may be admitted into evidence; it does not make those results unassailable. Indeed, the statute creates only a *presumption* of the test's validity, and it is that presumption that Keel was trying to attack. We conclude the trial court committed reversible error in unduly restricting the cross-examination.

We described the operation of the breathalyzer in detail in *Lauderdale v. State*, 548 P.2d 376, 378–79 (Alaska 1976) (quoting *State v. Baker,,* 56 Wash.2d 846, 355 P.2d 806, 809 (1960)). Pursuant to AS 28.35.-033(d),[8] the Department of Health and Social Services has promulgated extensive regulations regarding the administration of breathalyzer tests.[9] Keel alleges that the state's failure to establish compliance with these regulations should have precluded admission of the test results.

■■■ We will not consider most of the foundational objections Keel puts forth here, because of his failure to raise these objections below.[10] We do find that one

---

intoxicating liquor, but that fact may be considered with other competent evidence in determining whether the person was under the influence of intoxicating liquor.

(3) If there was 0.10 per cent or more by weight of alcohol in the person's blood, it shall be presumed that the person was under the influence of intoxicating liquor.

**4.** *See* note 3 *supra.*

**5.** *See* 2 R. Erwin, Defense of Drunk Driving Cases, §§ 22.05 and 22.07 (3rd ed. 1978), for examples of highly effective cross-examination along this line.

**6.** At first glance, Keel's questions regarding Culbertson's knowledge of the breathalyzer and its components may appear irrelevant, as Culbertson had testified that he had undergone the training mandated by 7 AAC 30.030 for administration of breathalyzer tests. Keel's questions were apparently designed to show that Culbertson had forgotten what he learned in that training, and thus to suggest to the jury that he may also have forgotten how to properly administer breathalyzer tests.

**7.** *See* note 8 *infra.*

**8.** AS 28.35.033(d) reads:

To be considered valid under the provisions of this section the chemical analysis of the person's breath shall have been performed according to methods approved by the Department of Health and Social Services. The Department of Health and Social Services is authorized to approve satisfactory techniques, methods, and standards of training necessary to ascertain the qualifications of individuals to conduct the analysis. If it is established at trial that a chemical analysis of breath was performed according to approved methods by a person trained according to techniques, methods and standards of training approved by the Department of Health and Social Services, there is a presumption that the test results are valid and further foundation for introduction of the evidence is unnecessary.

**9.** 7 AAC 30.010.070 (eff. 2/20/70).

**10.** Keel argues here, but failed to argue below, that the state did not prove that the breathalyzer used was of the Borkenstein type, as required by 7 AAC 30.010; that the breathalyzer was calibrated after the test within sixty days of the previous calibration, as required by 7 AAC 30.050(a); and that the test indicated .18

foundational objection has merit, and was properly brought to the attention of the trial court. Because proper calibration of the breathalyzer is essential to guarantee accurate readings, the regulations require that calibration be performed by an "instructor." 7 AAC 30.050(b). "Instructor" is defined by 7 AAC 30.040(a):

A person shall be certified as a qualified Breathalyzer instructor after completing an instructor's training course meeting the following standards:

(1) the course shall be equal to or exceed the instructor course offered by the Indiana University Department of Police Administration;

(2) the curriculum shall include an advance survey of current information on alcohol and the human body, operational principles and theories applicable to the breath testing program, instrument maintenance and calibration, legal considerations, public relations and principles of instruction;

(3) the trainee must satisfactorily pass written and practical examinations demonstrating an understanding of the theory of chemical tests for intoxication, methods for determining presence of ethyl alcohol, physiological effects of alcohol on the human body, the pharmacology and toxicology of alcohol, instrument maintenance and calibration.

The state failed to prove that the last calibration of the instrument prior to Keel's test was done by an instructor as defined by the regulations, and Keel objected to the admission of the test results on this ground.[11] The state did offer testimony from the Kodiak police records officer that Lieutenant Oldham, who signed the calibration report, was a "certified calibrator." But the state did not inquire further into where, when or by whom Oldham had been "certi-

fied." In view of the specific objection by defense counsel, we therefore conclude that the necessary foundation for admission was not established.

Nor can we find, as we did in *Oveson v. Municipality of Anchorage*, 574 P.2d 801 (Alaska 1978), that the state showed "substantial compliance" with the regulations, notwithstanding its failure to prove Oldham's qualifications. *Oveson* involved the inadvertent failure of the police officer administering the test to check one box on the "Breathalyzer Operational Checklist." We found substantial compliance because the officer testified at trial that he had in fact performed the step that he had neglected to check. *Id.* at 804–05. We noted that "the crucial concern is that the breathalyzer test be performed in a manner that assures accuracy according to the statutorily approved methods," *id.* at 805 and determined that that concern had been alleviated. We cannot reach the same conclusion here. The requirement that calibration be done by a qualified instructor indicates that calibration must be done skillfully to be accurate. The state's failure to show that Oldham was properly qualified, therefore, casts doubt on the accuracy of the calibration and hence on the reliability of the results of Keel's blood alcohol test.

The state's reliance on *Wester v. State*, 528 P.2d 1179, 1180–83 (Alaska 1974), is misplaced. *Wester* held that the necessary foundation for admission of breathalyzer test results could be established through official records rather than personal testimony. It did not alter the substantive requirements for admission, which, it noted, were specified by the legislature. *Id.* at 1181. Thus, for instance, a statement in the calibrator's report that he was a qualified instructor would have sufficed as founda-

---

percent alcohol by weight, as required by AS 28.35.033(a), rather than by volume. Had Keel raised these objections below, the state could presumably have cured these foundational defects.

11. Defense counsel made the following objection:

MR. SHARON: Number 2, I object to the admission of that for the reasons I've stated and, in addition, I object on the grounds that there has been no showing that the calibration was done by a qualified instructor under 7 AAC 30.040.

THE COURT: The objection's overruled. The Exhibits will be admitted, 1, 2 and 3.

tion under *Wester.* But no such evidence was offered.[12]

We conclude that the breathalyzer test results were improperly admitted. Because of the statutory presumption of intoxication that they raised, we cannot say that their admission constituted harmless error under *Love v. State*, 457 P.2d 622, 629–32 (Alaska 1969).[13]

The judgment of conviction is REVERSED.

BURKE, Justice, concurring.

I disagree with the majority's conclusion that Keel's conviction must be reversed because of lack of proof that the breathalyzer was calibrated by an "instructor," as required by 7 AAC § 30.050(b).

7 AAC § 30.040(b) states that a qualified breathalyzer "instructor" may calibrate instruments used for testing. 7 AAC § 30.-050(b)(2) requires an instructor calibrating such instruments to send his calibration records to the Department of Health & Social Services in Juneau. Sgt. Conrad Walters of the Kodiak Police Department testified that Lt. Oldham was the department's "certified calibrator of breathalyzer machines;" that he routinely calibrates such machines as part of his duties; that he makes records of his calibration results; that he sends these records to Juneau; and that he is required to do so by law. There was no evidence to the contrary.

Although Walters did not use the word "instructor," I think it can be fairly inferred from his testimony that Oldham was, in fact, an "instructor," properly qualified to calibrate the breathalyzer machine that

was used to test Keel. *Wester v. State*, 528 P.2d 1179, 1180–83 (Alaska 1974).

Otherwise, I concur.

12. The calibration report did not refer to the qualifications of the calibrator and was certified, under oath, as follows: "I hereby certify that the specific instrument has performed within the tolerances specified by the manufacturer and is approved for use in Alcohol Breath Testing." The defect here involved could be easily cured by adding to the certificate a statement that the calibrator is qualified by the State of Alaska Department of Health and Social Services under Title 7 of the Administrative Code of Alaska to teach the breathalyzer operator's course and calibrate the approved instruments.

13. There might possibly be a case where one could conclude that breathalyzer results erroneously admitted did not "appreciably affect" the jury's verdict. *Love v. State*, 457 P.2d at 632. But this is clearly not such a case, where Keel explained that his erratic driving was due to bad road conditions, and even the police said he did fairly well on his field sobriety tests.