**Bette M. ANDERSON, Appellant,**

v.

**MUNICIPALITY OF ANCHORAGE, Appellee.**

No. 5318.

Court of Appeals of Alaska.

May 21, 1982.

Daniel Westerburg, Birch, Horton, Bittner, Monroe, Pestinger & Anderson, Anchorage, for appellant.

Allen M. Bailey, Municipal Prosecutor, and Theodore D. Berns, Municipal Atty., Anchorage, for appellee.

Before BRYNER, C. J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

On December 27, 1979, Bette M. Anderson entered a plea of *nolo contendere* in the district court to a charge of driving with a blood alcohol level of 0.10 percent or more, in violation of former Anchorage Municipal Ordinance (AMO) 9.28.030.[1] Upon her plea,

---

1. AMO 9.28.030, as it existed at the time of Anderson's offense, provided:

 *Driving with 0.10% or greater blood alcohol.*

 A. It shall be unlawful for any person to operate, drive or be in actual physical control of an automobile, motorcycle or other motor vehicle in the municipality at such time as

Anderson was convicted and sentenced to serve ninety days in jail, with all but ten days suspended, and to pay a fine of $500. As an additional part of the sentence, Anderson's driver's license was suspended for one year. Anderson appealed to the superior court. The superior court subsequently affirmed Anderson's sentence, and this appeal followed.

On appeal to this court, Anderson asserts, as she did below, that the sentence imposed by the district court following her conviction of the municipality's 0.10 percent ordinance was unlawful. Having considered the arguments of the parties, we have concluded that the sentence received by Anderson was prohibited by Alaska law; [2] accordingly, we reverse.

We believe that the issue of the lawfulness of Anderson's sentence is governed by AS 28.35.230, the pertinent provisions of which state:

Penalty for violations of law, regulations, and municipal ordinances. (a) It is a misdemeanor for a person to violate a provision of this title unless the violation is by this title or other law declared to be a felony or an infraction.

(b) A person convicted of a misdemeanor for a violation of a provision of this title for which another penalty is not specifically provided is punishable by a fine of not more than $500, or by imprisonment for not more than 90 days, or by both. In addition, the privilege to drive

or the registration of vehicles may be suspended or revoked.

(c) *Unless otherwise specified by law* a person convicted of a violation of a regulation promulgated under this title, *or a municipal ordinance regulating vehicles or traffic when the municipal ordinance does not correspond to a provision of this title*, is guilty of an infraction and is punishable by a fine not to exceed $300. [Emphasis added.]

Since Anderson was not convicted under Title 28 of the Alaska Statutes, the sentencing provisions of AS 28.35.230(a) and (b) are inapplicable to her. In determining whether Anderson's sentence was permissible, we must therefore focus upon the provisions of AS 28.35.230(c) as a starting point. By their plain terms, these provisions restrict the maximum penalty for persons convicted of municipal ordinances regulating vehicles or traffic to a fine of $300. Two exceptions to the $300 limitation are carved out by subsection (c): first, the $300 restriction is inapplicable if a different penalty is "otherwise specified by law"; and, second, the restriction is similarly inapplicable when a person is convicted of a municipal ordinance which "corresponds" to a provision of Title 28 of the Alaska Statutes.

In seeking to uphold the sentence imposed against Anderson, the municipality advances a two-fold argument with respect to the language of AS 28.35.230(c). It is contended that, under subsection (c), the term "law," as used in the phrase "unless

the alcohol content of his blood, by weight, is 0.10% or greater as determined by a test of his blood, breath or urine.

B. A person convicted of violating subsection A hereof is punishable by a fine of not more than $1,000 or by imprisonment for not more than one year, or by both .... In addition, the operator's license shall be revoked for a period identical to those prescribed in A.S. 28.15.181 for persons convicted of offenses under Section 9.28.020 of this code.

2. In *Simpson v. Municipality of Anchorage*, 635 P.2d 1197 (Alaska App.1981), we held that former AMO 9.28.030 was inconsistent with previously existing provisions of state statutes regulating operating a motor vehicle while under the influence of intoxicating liquor; we reversed the convictions in *Simpson* on that ba-

sis. Anderson has not argued the invalidity of former AMO 9.28.030, as such. Although the invalidity of the ordinance might be deemed a jurisdictional issue, thereby making it possible for us to rely on the plain error doctrine in this case, our decision in *Simpson* did not completely foreclose the municipality from establishing the validity of former AMO 9.28.030 in cases other than those considered in *Simpson*. Instead, our decision expressly left open to the municipality the option of establishing, in other cases, that former AMO 9.28.030 was valid under the terms of AS 28.01.010(b) as an ordinance necessary to meet specific local requirements. *Simpson v. Municipality of Anchorage*, 635 P.2d at 1208 & n.18. Accordingly, we do not consider the issue of the validity of former AMO 9.28.030 in this case.

otherwise specified by law," is intended to include municipal ordinances. Thus, the municipality asserts that the penalty provisions contained in former AMO 9.28.030(B) must be deemed to be a provision of "law" as that term is used in AS 28.35.230(c). Alternatively, it is contended that former AMO 9.28.030, should be held to "correspond" to the provisions of former AS 28.-35.030, the section of Alaska's Motor Vehicle Code which governed the offense of operating a motor vehicle while under the influence of intoxicating liquor (OMVI) at the time Anderson's offense was committed.[3]

We consider, first, the municipality's contention that the term "law," as used in AS 28.35.230(c), must be read to include municipal ordinances. Both the municipality and the appellant, in arguing this point, correctly observe that the scope of the term "law" must be determined by the context in which it is used. However, before turning to the specific context of AS 28.35.230(c), we find it helpful and of some guidance to consider the manner in which the term "law" is used in several more generalized areas of the Alaska Constitution, Alaska Statutes, and pertinent Alaska case law.

Under the provisions of article XII, section 11, of the Alaska Constitution, the term "by law" is used interchangeably with the term "by the legislature."[4] More specifically, useage by the Alaska Constitution of the term "law" in delineating the respective powers of state and local governments provides a clear indication that "law" is a term intended to refer to the legislative powers of the state, and not those of political subdivisions such as the municipality. Thus, article X, section 11, of the Alaska Constitution states:

Home rule powers. A home rule borough or city may exercise all legislative powers not prohibited by law or by charter.

As Anderson correctly points out in her argument on appeal, if the term "law" were deemed to include municipal ordinances, the provisions of article X, section 11, would be rendered nugatory, since any home rule borough or city would then be authorized, by the mere passage of ordinances, to confer upon itself a virtually limitless array of powers, without regard to the provisions of the Alaska Statutes.

We find further guidance in Title I of the Alaska Statutes, which encompasses the general provisions dealing with codification of the state's legislative enactments. AS 01.05.011[5] is indicative of the legislature's intent to confine the term "Alaska law" to the legislative enactments codified in the Alaska Statutes. The manner in which the term "law" has been used in Alaska Supreme Court decisions is consonant with the use of that term within the Alaska Constitution and AS 01.05.011. For example, in *Jefferson v. State*, 527 P.2d 37 (Alaska 1974), the court was called upon to deter-

---

3. In 1980, the Alaska Legislature rewrote the provisions of its OMVI statute, AS 28.35.030, redesignating the offense of OMVI as "Driving While Intoxicated." As rewritten, the state's statute provided, for the first time, that a person is "intoxicated" for the purposes of AS 28.35.030 "when there is 0.10 percent or more by weight of alcohol in his blood . . . ." AS 28.35.030(a)(2). Subsequently, the Municipality of Anchorage repealed AMO 9.28.030 and amended its former ordinance dealing with driving while intoxicated, AMO 9.28.020, to reflect the legislature's amendment of AS 28.35.-030. Accordingly, we are not presented in this case with any issue concerning the validity of current municipal ordinances regulating the offense of driving while intoxicated, and we express no opinion concerning the validity of the penalty provisions currently included in such ordinances.

4. Alaska Const. art. XII, § 11, provides:

Law-Making Power. As used in this constitution, the terms "by law" and "by the legislature," or variations of these terms, are used interchangeably when related to law-making powers. Unless clearly inapplicable, the law-making powers assigned to the legislature may be exercised by the people through the initiative, subject to the limitations of Article XI.

5. AS 01.05.011 provides, in pertinent part:

Designation and citation. The bulk formal revision of Alaska law adopted and enacted into law by AS 01.05.006 and as amended and supplemented is known as the "Alaska Statutes" . . . .

mine the scope of legislative authority conferred upon home rule cities and boroughs by article X, section 11, of the Alaska Constitution. It concluded that the terms of article X, section 11, permitting local governments to exercise authority "not prohibited by law or charter" must be liberally construed and literally applied. Thus, the court held that home rule cities and boroughs are authorized to enact ordinances inconsistent with state law in the absence of a specific prohibition. In so finding, the court in *Jefferson* stated:

The prohibition must be either by express terms or by implication such as where the statute and ordinance are so substantially irreconcilable that one cannot be given its substantive effect if the other is to be accorded the weight of law.

*Jefferson v. State*, 527 P.2d at 43 (footnote omitted). It is manifest that the distinction between "law" and municipal ordinances is implicit in the phrase "if the other [the ordinance] is to be accorded the weight of law."

Thus, we believe that use of the term "law" in the Alaska Constitution, in the general provisions of the Alaska Statutes, and in supreme court decisions dealing with the respective legislative powers of the state and its political subdivisions consistently indicates that "law," when used in statutory provisions referring to the legislative process, should normally be construed to include statutes enacted by the state legislature, but not the ordinances of home rule cities or boroughs.

The municipality argues, nonetheless, that various provisions of Title 28 of the Alaska Statutes employ differing terminology in referring to legislative enactments such as state statutes, regulations, and municipal ordinances. For example, the municipality points to AS 28.20.230(b), 28.20.-

420(c), and 28.20.050(a), all of which employ the terminology "the laws of this state." [6] From statutory provisions such as this, the municipality infers that the legislature could have made its intent clear had it meant to exclude municipal ordinances from the definition of "law" as used in AS 28.35.230(c).

Admittedly, the provisions of Title 28 are often inconsistent in the precise terminology which they employ in referring to legislative enactments. We must bear in mind, however, that since its original enactment in 1951, Alaska's Motor Vehicle Code—Title 28 of the Alaska Statutes—has been the subject of numerous and extensive, piecemeal revisions and amendments.[7] For this reason, we are hesitant to ascribe a great deal of significance to the fact that a number of Title 28's provisions make specific reference to "the laws of this state."

We deem it more significant that, in a number of other provisions in Title 28, the legislature has shown a tendency to employ affirmative language referring to regulations and municipal ordinances when it desired to include such enactments within the scope of a particular section. Thus, for example, AS 28.15.191(a) requires Alaska courts to submit reports of traffic offense convictions to the Department of Motor Vehicles. In so doing, the section specifies that, under its terms, a conviction includes "an offense under this title or a regulation adopted under this title, or another law or regulation of this state, or a municipal ordinance which regulates the driving of vehicles . . . ." Similarly, AS 28.15.261 provides, in pertinent part:

In §§ 221–261 of this chapter (1) 'traffic laws' means statutes, regulations, and municipal ordinances governing the driving or movement of vehicles . . . .

**6.** *See also* AS 28.05.011 (using the terminology "unless otherwise provided by statute") and AS 28.20.590 ("violation of the motor vehicle laws of this state").

**7.** Title 28 of the Alaska Statutes was originally enacted as ch. 124, SLA 1951. For an example of the extensive revisions to Title 28 since its original enactment, *see* the legislative history

of chapter 10, Title 28, summarized under the heading "Repeal of Former Chapter" at the outset of AS 28.10. This legislative history indicates that chapter 10 of Title 28 was repealed in its entirety and reenacted in 1978, and that, prior to 1978, more than 50 amendments to the original version of the chapter had been enacted by the legislature.

Accordingly, it would appear that, when the legislature has desired to include municipal ordinances within the scope of the provisions of Title 28, it has implemented this desire by use of affirmative, inclusory language.

Thus, the use of the term "law" in the Alaska Constitution, the general provisions of the Alaska Statutes, and decisions of the Alaska Supreme Court, viewed in conjunction with the specific provisions of Title 28 containing language expressly including references to municipal ordinances as distinct from state laws and regulations, tends to indicate that the term "law," as used in the specific context of AS 28.35.230(c), should be deemed to be restricted to enactments of the Alaska Legislature, excluding state regulations and municipal ordinances alike.

The manner in which the term "law" is used in AS 28.35.230 must, however, ultimately be determinative. When subsections (a), (b), and (c) of AS 28.35.230 are read in conjunction, it seems apparent that the intent of the legislature in enacting these provisions was three-fold.

First, in subsection (a), the legislature classified all violations of Alaska's Motor Vehicle Code, Title 28, as misdemeanors unless specific statutory provisions classified a violation as a felony or an infraction. Use of the term "law" in subsection (a) must be deemed to be an unequivocal reference to statutory enactments of the Alaska Legislature, excluding both state regulations and municipal ordinances. In the context of the phrase "by this title or other law," the term "law" appears to be a limited reference to the provisions of other titles of the Alaska Statutes. In fact, the term "law," as used

in subsection (a), must be read to refer exclusively to enactments of the Alaska Legislature, since neither state regulations nor municipal ordinances could properly designate any violation of Title 28 "to be a felony"; nor, for that matter, would the municipality have any authority to classify a violation of Title 28 as either "a felony or an infraction." [8]

The second legislative purpose, reflected in AS 28.35.230(b), was to provide a penalty for violations of those provisions of Title 28 not containing their own penalty clauses. The third purpose of AS 28.35.230, embodied in subsection (c), was to classify all violations of state traffic regulations and all violations of municipal traffic ordinances not corresponding to offenses described in Title 28 as infractions, punishable exclusively by a fine not to exceed $300. Thus, the apparent meaning of AS 28.35.230, when read as a whole, would foreclose the municipality's position that use of the term "law" in subsection (c) should be taken to include municipal ordinances, as well as state statutes.

Beyond the fact that a common sense reading of AS 28.35.230 conflicts with the municipality's suggested interpretation of the term "law," as used in AS 28.35.230(c), several other aspects of these provisions foreclose the position advocated by the municipality. As we have noted, the legislature's use of the term "law" in AS 28.35.-230(a) constitutes an unequivocal reference to statutory enactments of the Alaska Legislature; as it appears in subsection (a), the term "law" must be deemed to exclude both state regulations and municipal ordinances. Reading the provision of subsection (c) *in pari materia* with the provisions of subsec-

---

**8.** Since it would be theoretically possible for a state regulation promulgated under Title 28 of the Alaska Statutes to classify violations of provisions of Title 28 as infractions, if the language of AS 28.35.230(a) were viewed in isolation, it would be possible to argue that the term "law," as used in subsection (a), while excluding municipal ordinances, might include state regulations. Such an interpretation, however, is precluded by a consideration of AS 28.35.-230(b). Because subsection (b) establishes misdemeanor penalties for violations of all pro-

visions of Title 28 which do not contain specific penalty provisions, a regulation purporting to classify a violation of any provision of Title 28 as an infraction would violate the terms of subsection (b) and, since statutory provisions prevail over conflicting regulations, would be invalid. Accordingly, when subsections (a) and (b) are read together, it is manifest that use of the term "law" in subsection (a) must be read to exclude both state regulations and municipal ordinances.

tion (a) suggests that the term "law" should be accorded the same meaning in both subsections.

It is further significant that in AS 28.35.-230(b), which establishes a standard penalty for violation of those sections of Title 28 which contain no penalty provisions of their own, the Alaska Legislature chose to use the specific language, "A person convicted of a misdemeanor for a violation of a provision of this title *for which another penalty is not specifically provided . . . .*" (Emphasis added.) If, as the municipality contends, subsection (c) of AS 28.35.230 is intended to do nothing more than provide a penalty for violations of state traffic regulations and municipal ordinances which do not contain their own penalty provisions, then there appears to be no reason why the legislature would not have used language similar to the language of subsection (b) in drafting subsection (c).

Finally, we deem it significant that the heading given by the legislature to AS 28.-35.230 unmistakably recognizes a distinction between "law," "regulations," and "municipal ordinances." AS 28.35.230 was entitled: "Penalty for violations of law, regulations, and municipal ordinances." [9]

■ Accordingly, the provisions of AS 28.35.230, when read in their entirety, consistently reflect the legislature's recognition of a distinction between the terms "law," "regulations," and "municipal ordinances." We therefore conclude that the term "law," as used in subsection (c) of AS 28.35.230, must be construed to refer to statutory enactments of the Alaska Legislature and that this term cannot be read to include the provisions of municipal ordinances. Thus, we must next consider whether the municipality's 0.10 percent ordinance, former AMO 9.28.030, corresponded with any provision of Title 28 of the Alaska Statutes in effect at the time Anderson's offense was committed.

The municipality argues that former AMO 9.28.030 corresponded to former AS 28.35.030, Alaska's OMVI statute as it existed when Anderson was arrested. Former AS 28.35.030 provided, in pertinent part:

*Driving while under the influence of intoxicating liquors or drugs.* (a) A person who, while under the influence of intoxicating liquor . . . operates or drives an automobile, motorcycle or other vehicle in the state, upon conviction, is punishable by a fine of not more $1,000, or by imprisonment for not more than one year, or by both . . . .

By contrast, former AMO 9.28.030 provided, in pertinent part:

*Driving with 0.10% or greater blood alcohol.*

A. It shall be unlawful for any person to operate, drive or be in actual physical control of an automobile, motorcycle or other motor vehicle in the municipality at such time as the alcohol content of his blood, by weight, is 0.10% or greater as determined by a test of his blood, breath or urine.

B. A person convicted of violating subsection A hereof is punishable by a fine of not more than $1,000 or by imprisonment for not more than one year, or by both . . . .

It is the municipality's contention that its 0.10 percent ordinance was consistent with Alaska's OMVI statute, that it regulated the same type of conduct, *i.e.,* driving by persons who had consumed alcohol, and that its purpose was the same as that of the OMVI statute: to prevent the injuries to persons and property caused by drivers whose ability was impaired by consumption of alcohol. On this basis, the municipality urges us to find that former AMO 9.28.030 corresponded with former AS 28.35.030, in compliance with the requirements of AS 28.35.230(c).

While AS 28.35.230(c) specifically permits municipal ordinances to exceed the maxi-

---

**9.** While we would normally attach no significance to a heading given to a legislative enactment in the codification process, it is significant in the present case that the heading of AS

20.35.230 was specifically enacted by the legislature as a part of that statutory provision. *See* § 12 ch. 241, SLA 1976.

mum penalty of $300 which it establishes when the ordinances "correspond to a provision of" the Alaska Motor Vehicle Code, no definition of the word "correspond" is provided. Webster's Dictionary defines "correspond" in the following terms:

> Correspond ... 1. to be in agreement (*with* something); conform (*to* something); tally; harmonize 2. to be similar, analogous, or equal (*to* something) ....

Webster's New World Dictionary (2d ed. 1980) (emphasis in original). Nothing in the language of AS 28.35.230 suggests that the word correspond was intended to be given a technical meaning, different from its common useage. However, we think it is germane to observe the emphasis which Alaska's Motor Vehicle Code places on achieving statewide uniformity of traffic laws.[10]

Given the common meaning of the word "correspond" and Title 28's emphasis on uniformity of traffic laws, we do not believe that former AMO 9.28.030 can be construed to correspond to former AS 28.35.030. Former AS 28.35.030 expressly prohibited the operation of a motor vehicle by a person actually under the influence of intoxicating liquor. An essential element of this offense, and one which the state was obligated to prove beyond a reasonable doubt, was that a person's ability to drive was actually impaired by virtue of the consumption of alcohol. As a complement to this statute, the Alaska Legislature enacted an implied consent statute, which required persons arrested under AS 28.35.030 to sub-

mit to a breathalyzer examination.[11] A breathalyzer test obtained by implied consent which indicated a blood alcohol level of 0.10 percent or more gave rise to a presumption that, for the purposes of former AS 28.35.030, the person tested was under the influence of intoxicating liquor.[12] However, the breathalyzer presumption created under the former provisions of state law was a rebuttable one. Proof of actual impairment of a person's ability to drive remained, at all times, the gravamen of the offense of OMVI, and former AS 28.35.033(c) expressly reserved, to both the state and the accused, the right to present relevant evidence bearing on the issue of actual influence, without regard to how high or how low the result of a breathalyzer test might have been.[13]

At the time of Anderson's offense, provisions of Anchorage Municipal Ordinances existed that were, in substance, identical to the state's OMVI statute, its implied consent law, and its statute establishing rebuttable presumptions with respect to blood alcohol tests obtained by implied consent.[14] Former AMO 9.28.030, the municipality's 0.10 percent ordinance, was enacted as an additional measure. The focus of the offense established by former AMO 9.28.030 was substantially different from the focus of the state's former OMVI statute, since, under the municipal ordinance, proof of the accused's actual impairment due to consumption of alcohol was dispensed with as an element of the offense. The emphasis of former AMO 9.28.030 shifted from proof of

---

10. See *Simpson v. Municipality of Anchorage*, 635 P.2d at 1202–03.

11. See AS 28.35.031.

12. At the time of the offense in question, AS 28.35.033(a) provided, in part:

> *Chemical Analysis of Blood.* (a) Upon the trial of a civil or criminal action or proceeding arising out of acts alleged to have been committed by a person while operating a motor vehicle under the influence of intoxicating liquor, the amount of alcohol in the person's blood at the time alleged, as shown by chemical analysis of the person's breath, shall give rise to the following presumptions:
> ....

> (3) If there was 0.10 per cent or more by weight of alcohol in the person's blood, it shall be presumed that the person was under the influence of intoxicating liquor.

13. Former AS 28.35.033(c) provided:

> The provisions of (a) of this section [establishing breathalyzer presumptions] may not be construed to limit the introduction of any other competent evidence bearing upon the question of whether the person was or was not under the influence of intoxicating liquor.

14. Former AMO 9.28.020, 9.28.021 and 9.28.023 closely tracked the provisions of former AS 28.35.030, 28.35.031 and 28.35.033, respectively.

actual impairment of the accused to establishing the accused's blood alcohol level. It is apparent, then, that the essential elements of the offense established by former AMO 9.28.030 differed markedly from the essential elements of OMVI under former AS 28.35.030 and that the municipality's 0.10 percent ordinance created a new offense, separate and distinct from the state offense of OMVI and its municipal counterpart.[15]

Despite the manifest differences between former AMO 9.28.030 and former AS 28.35.030, the municipality contends that its 0.10 percent ordinance must be construed to "correspond" to the state's OMVI statute, in compliance with the provisions of AS 28.35.230(c). In essence, the municipality's position boils down to the argument that, under the provisions of AS 28.35.230(c), a municipal ordinance corresponds to a state statute whenever the subject matter and the purpose of the ordinance are the same as the subject matter and purpose of the statute.

 We are unable to agree with the municipality's proposed construction of AS 28.35.230(c) since we believe that it is excessively broad. For an ordinance to correspond with a provision of Title 28 of the Alaska Statutes within the meaning of AS 28.35.230(c), more is required than a mere similarity of general subject matter and broad social purposes. We think that the requirement of correspondence stated in AS 28.35.230(c) calls for a level of similarity between a municipal ordinance and a provision of Title 28 that would make the ordinance a functional equivalent of its statutory counterpart. While identity is certainly not necessary, we believe that, at the very least, the term "correspond," as it is used in AS 28.35.230(c), requires similarity of the basic elements of an offense established by ordinance and an offense described in Title 28 of the Alaska Statutes.

 Because it is apparent in this case that former AMO 9.28.030 was not intended to be an equivalent of former AS 28.35.030, and because of the manifest disparity between the essential elements of the municipality's 0.10 percent ordinance and the state's OMVI statute, we conclude that the ordinance does not correspond with the statute pursuant to AS 28.35.230(c).

Since we find that municipal ordinances are not included within the ambit of the term "law," as it is used in AS 28.35.230(c), and since we also find that former AMO 9.28.030 cannot be deemed to correspond to former AS 28.35.030, it necessarily follows that the maximum penalty provided for under AS 28.35.230(c)—a fine not to exceed $300—was applicable to the municipality's 0.10 percent ordinance at the time of Anderson's offense.

Accordingly, we REVERSE the decision of the superior court affirming the sentence imposed by the district court and REMAND this case with directions that the sentence be VACATED and that a new sentence not to exceed a fine of $300 be imposed.

SINGLETON, Judge, dissenting.

I believe *Simpson v. Municipality of Anchorage*, 635 P.2d 1197 (Alaska App.1981), was incorrectly decided for the reasons set out in Judge Coats' dissenting opinion. I am also of the view that statutes, such as AS 28.01.010(a) which was interpreted in *Simpson*, and AS 28.35.230(c) which is interpreted in this case, must be read in the light of article X, sections I and II, of the Alaska Constitution, requiring a liberal interpretation of municipal powers, and I suggest, by necessary implication, a strict construction

---

**15.** The fact that the municipality's 0.10 percent ordinance constituted a new and distinct offense, one that cannot realistically be considered as the equivalent of the state's former OMVI statute, was acknowledged by the Municipal Attorney when AMO 9.28.030 was presented to the Municipal Assembly for its approval. In Municipality of Anchorage Assembly Memorandum No. AM 859–76, submitted by the Municipal Attorney to the Assembly on December 14, 1976, the following language relating to the ordinance was included:

It [the 0.10 percent ordinance] is to be used in addition to—but not in lieu of—our driving while intoxicated ordinance, and will close a gap in our ability to identify and successfully prosecute drinking drivers.

of any statute purporting to "prohibit" the exercise of municipal power.[1] These constitutional provisions have been thoroughly reviewed in V. Fischer, *Alaska's Constitutional Convention* 116–27 (1975), and Sharp, *Home Rule in Alaska: A Clash Between the Constitution and the Court*, 3 UCLA-Alaska Law Review 1 (1973). I will not repeat that review here, let it suffice to say that I agree with Sharp that,

> If the grant of 'all legislative power' is to be given the meaning of its Texas predecessor, namely, legislative power as broad as that possessed by the state legislature, and if that grant is to be construed in the light of the interpretative mandate of Article X, section 1 requiring a liberal construction be given to municipal powers, one is compelled to the initial conclusion that legislative acts of a home rule municipality rise in dignity to a level close to those of the state legislature. Municipal home rule acts are inferior only in that they are subject to being prohibited by the municipality's charter and by an act of the state legislature. Accepting this near equality of the two acts, the resolution of a conflict between the two (when the home rule municipality's act has not been clearly prohibited) is apparent: the court should resolve the conflict in the same manner it resolves a conflict between two acts of the legislature. When it is asserted that two acts of the legislature are in conflict, the question is whether there is such a conflict as will compel the court to find an implied intent on the part of the legislature to repeal the prior conflicting act. It is the duty of the court to construe statutes in a manner which will produce harmony. As repeal by implication is disfavored by the courts, only when no reasonable construc-

tion can be found which will permit both acts to stand should the court resort to implied repeal by the dominant statute. If the court were to adopt this approach, the question of the level of friction which will cause the court to invalidate a home rule enactment would be clearly established as that which exists when there is an irreconcilable conflict.

Sharp, *supra*, at 30–31 (footnotes omitted).

Thus to the extent that a municipal penalty provision must be attached to an ordinance which corresponds to a state statute to survive AS 28.35.230(c), I would define "correspond" as "be similar to" and conclude that former AMO 9.28.030 is sufficiently similar to former AS 28.35.030 to pass muster.[2]

I am particularly concerned that the members of the State Constitutional Convention may have foreseen today's holding and sought (ineffectually as it turns out) to prevent it.

The provision of the Alaska Constitution establishing home rule powers is based upon a comparable provision in the Texas State Constitution. Sharp, *supra*, at 24–27. There are some differences between the two sections, however. As Sharp points out:

> [A] deviation from the Texas and AMA model is the character of the legislative act which invalidates a home rule exercise of power. Under the Alaska Constitution the home rule legislative power must be *prohibited*. Under the AMA model the power must be denied. The comment explaining that provision of the AMA model states that the power exists for the home rule city 'so long as the legislature does not expressly deny it.' Under the Texas grant, home rule char-

---

1. A state statute which purported to "prohibit" any municipal ordinance which was not identical to a state statute would track the language of article X, section 11, but would, if given effect, amend the constitution, drastically altering the local government provisions of article X. I do not believe that the constitutional convention intended that the legislature could "prohibit" municipal action by general enactment and yet the interpretation placed upon AS

28.01.010(a) in *Simpson* and AS 28.35.230(c) here has that effect.

2. Correspond . . . v. 1. to be in harmony or agreement, *this corresponds with what I've heard.* 2. to be similar or equivalent, *a parliament that corresponds to our congress* . . . .
Oxford American Dictionary 143 (1980) (emphasis in original).

ters and ordinances may not contain any provision which is *inconsistent* with the constitution or general laws enacted by the legislature. The result of judicial application of this standard in Texas was discussed *supra. The Keith book*[3] *which was before the committee made specific reference to what its author believed was a strict interpretation given the 'no inconsistency' phrase pointing to a decision in which the Texas court had found inconsistency where the municipality had set a heavier penalty than the state for a penal code violation.*

With the foregoing interpretation of the Texas experience before it, it is significant to note that not only did the committee not propose an 'inconsistency' or 'conflict' standard but that it never used such a term in its discussion of the mechanics for limiting municipal home rule legislative powers. The idea of a specific withdrawal or prohibition indicates that the committee intended some sort of direct action which clearly recognized the home rule power being limited.

*Id.* at 26–27 (footnotes omitted; emphasis added). In his analysis, Sharp is referring to the following statement by Keith:

*Conflict with a general law.* We find that where a charter provision or ordinance conflicts with the general law the general law is supreme even though the charter provision or ordinance deals entirely with municipal affairs. A city may act for itself within the scope of its functions in any field not covered by general law, but enactment of a general law applicable to all cities of a certain class precludes any city of that class from enacting contrary legislation. In addition, a general statute expressly applicable to general law cities does not apply to home rule cities and conversely. The courts are very strict as to what constitutes a conflict between a state law and a charter

provision or ordinance. For example, a municipal ordinance which for an offense contains penal provisions different from those of the state penal code is held by the courts to constitute a conflict with the state law even though the municipal penal provision imposes a stiffer penalty.

J. Keith, *supra*, at 90–91 (footnotes omitted).

Keith cites *City of Wink v. Griffith Amusement Co.*, 129 Tex. 40, 100 S.W.2d 695, 698 (1936), and *El Paso Electric Co. v. Collins*, 23 S.W.2d 295, 296 (Tex.Civ.App. 1930), for the proposition that divergence of penalty renders an ordinance "inconsistent" and thus invalid. It is ironic that our court today adopts *sub silentio* the rule of these cases—a rule which, as Sharp persuasively argues, the constitutional convention expressly rejected.[4]

---

3. The "Keith" book referred to is J. Keith, *City and County Home Rule In Texas* (1951).

4. The state and local laws governing driving while intoxicated under discussion here have been substantially amended and are now virtu-

ally identical, nevertheless *Simpson* and this case speak generally to the relationship between state and local laws regulating motor vehicles. They therefore have significance far beyond drunk driving.