Richard COOLEY, Bienvenido Marine, and William Thompson, Appellants,

v.

MUNICIPALITY OF ANCHORAGE, Appellee.

Nos. 5859, 6112 and 6151.

Court of Appeals of Alaska.

Aug. 6, 1982.

**252**

Deborah Smith, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellants.

Allen M. Bailey, Municipal Prosecutor, and Theodore D. Berns, Municipal Atty., Anchorage, for appellee.

Before BRYNER, C. J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

This appeal concerns three consolidated Anchorage district court cases. Richard Cooley, Bienvenido Marine and William Thompson were each charged in two count complaints with driving while intoxicated, AMC 9.28.020, and with driving with a blood or breath alcohol level in excess of 0.10 percent, AMC 9.28.030.[1] In a jury tri-

---

1. Anchorage's driving while intoxicated ordinance, AMC 9.28.020, makes it illegal to drive "while under the influence of intoxicating liquor." Thompson was arrested on August 28, 1979, and at that time AMC 9.28.023(A)(3) established the following presumption:

> If there was 0.10% or more by weight of alcohol in the person's blood, it shall be presumed that the person was under the influence of intoxicating liquor.

Also at that time, AMC 9.28.030(A) provided:

> It shall be unlawful for any person to operate, drive or be in actual physical control of an automobile, motorcycle or other motor vehicle in the municipality at such time as the alcohol content of his blood, by weight, is 0.10% or greater as determined by a test of his blood, breath or urine.

On November 6, 1979, prior to the arrests of Cooley and Marine, AMC 9.28.023(A)(3) was amended to read as follows:

> If there was a 0.10% or more by weight of alcohol in the person's blood, or 100 milligrams or more of alcohol per 100 milliliters of his blood, or 0.10 grams or more of alcohol per 210 liters of his breath, it shall be presumed that the person was under the influence of intoxicating liquor.

AMC 9.28.030(A) was amended along similar lines so as to phrase the 0.10 offense in terms of breath as well as blood alcohol concentrations.

In accordance with the ordinance in effect at the time, the complaint charging Thompson was phrased in terms of blood alcohol levels. The complaints charging Cooley and Marine, however, reflected the amendments by phras-

al, Cooley was found guilty on both counts. Juries acquitted Marine and Thompson of the driving while intoxicated charge but found them guilty on the 0.10 percent theory. Because all have raised similar challenges to the 0.10 ordinance and to the use of the breathalyzer test, their appeals have been consolidated.

■ We note at the outset that appellants raise two issues which we have already decided in their favor in other cases. First, they claim that the Anchorage ordinances in effect at the time they were charged were inconsistent with state law and therefore invalid under AS 28.01.010(a). In *Simpson v. Municipality of Anchorage*, 635 P.2d 1197 (Alaska App.1981), we held that the Anchorage ordinances were in fact invalid as inconsistent with state law.[2]

Second, appellants argue that the municipality's failure to preserve a breath sample at the time of arrest for later independent analysis violated their due process rights to confront and cross-examine the evidence against them, specifically, the results of the breathalyzer test. In the companion case to this case, also announced today, we held that under the due process clause, article I, section 7 of the Alaska Constitution, the defendants must be offered the opportunity to preserve a breath sample or offered a similar opportunity to verify the results of the breathalyzer test. *Municipality of Anchorage v. Cisneros,* 649 P.2d 256 (Alaska App. 1982).

Although we realize that the holdings in *Simpson* and *Cisneros* are sufficient to dispose of these cases, we have nevertheless decided to address the other issues raised by the appellants. It is clear that these other issues will be raised again; thus we deem it appropriate to address them now so as to avoid the considerable waste of resources necessary to prepare such a case for appeal. The parties expended substantial effort in briefing and arguing this case, as well as considerable time and money in preparing a voluminous evidentiary record which included extensive expert testimony. We can see no purpose in requiring the parties and the lower courts to spend significant time, money and effort in repeating a task already done.

■ Appellants argue that the methods and procedures used to enforce AMC 9.28.030 operate to deny a defendant's due process right to meaningfully cross-examine the evidence against him.[3] *Keel v. State,* 609 P.2d 555 (Alaska 1980); *Lauderdale v. State*, 548 P.2d 376 (Alaska 1976). Specifically, their argument focuses on the use of the breathalyzer as a means of proving that a defendant's blood or breath alcohol level exceeds the 0.10 limit established by AMC 9.28.030.[4] They argue that the breathalyzer is often inaccurate and that there is no adequate means of challenging the breathalyzer result in a court of law.

Essentially, appellants point to three general areas of breathalyzer inaccuracy.

ing the 0.10 offense in terms of breath alcohol concentrations.

2. I dissented in the *Simpson* case. Judge Singleton was disqualified from *Simpson* because he had ruled as a trial judge in one of the cases before us in *Simpson.* Sitting as a superior court judge, Judge Singleton had ruled that the municipal ordinance was not inconsistent with state law. Judge Singleton also recently indicated that he agreed with my dissent in *Simpson. Anderson v. Municipality of Anchorage,* 645 P.2d 205, 213 (Alaska App.1982) (Singleton, J., dissenting). However, both Judge Singleton and I have agreed that since this issue has formerly been decided by this court, we should follow the doctrine of *stare decisis* and adhere to the prior decision.

3. Appellants also claim that AMC 9.28.030 violates due process because it does not require criminal intent and because a person has no way of knowing when he has reached a blood or breath alcohol level which places him in violation of the ordinance. We have already rejected these contentions in *Morgan v. Municipality of Anchorage*, 643 P.2d 691 (Alaska App. 1982), and *Van Brunt v. State*, 646 P.2d 872, (Alaska App.1982).

4. Though not so argued by the appellants, the points raised here relating to AMC 9.28.030's 0.10 standard are also relevant to the 0.10 presumption established by AMC 9.28.023(A)(3). *See* AMC 9.28.030; AMC 9.28.023(A)(3), *supra* note 1. Similarly, our resolution of this issue in the context of AMC 9.28.030 may equally be applied in the context of AMC 9.28.023(A)(3).

First, they argue the breathalyzer may fail to accurately reflect current blood or breath concentrations. They assert that machine malfunction, operator error, or the influence of biological factors unique to the test subject, e.g., fever or flu, could yield inaccurately high test results. They further note that the experts testified that even when operating as designed and when not influenced by such extraneous factors, the breathalyzer is subject to a plus or minus ten-percent margin of error at the 0.10 level.

Second, appellants argue that even if the breathalyzer test result accurately reflects current blood or breath alcohol concentrations, that result may have little bearing on the alcohol concentrations existing at the time of driving. State regulations require that the subject be observed for a fifteen-minute period prior to administration of the breathalyzer test, 7 AAC 30.020(2),[5] and as a practical matter, the test is generally administered thirty to sixty minutes after the subject was driving. Appellants point to variations in drinking patterns and in alcohol absorption and clearance rates, and contend that the results of a breathalyzer test administered at some point after the subject was driving may not reflect what

the subject's blood or breath alcohol concentration in fact was at the time of driving.

Third, appellants argue that the breathalyzer may inaccurately convert breath alcohol concentrations into blood alcohol concentrations.[6] Expert testimony established that the ratio applied in translating breath alcohol concentrations into blood alcohol concentrations served to yield an inaccurately high result in fourteen percent of the cases.

We do not dispute the appellants' contentions in regard to these possible sources of breathalyzer test inaccuracy. We do, however, dispute their significance. Despite the shortcomings catalogued above, the evidentiary record supports the conclusion that the breathalyzer is fundamentally accurate in the vast majority of cases.[7]

██ Furthermore, we do not believe that the use of breathalyzer test results as evidence serves to frustrate defendants' due process right to cross-examine the evidence against them. As the Alaska Supreme Court observed in *Keel v. State*, 609 P.2d at 557, even though breathalyzer test results may be admitted into evidence, that does not mean that those results are unassailable.[8] Breathalyzer test results, like any

5. This observation period insures that the test results will not be affected by the subject's recent regurgitation or by the placement of anything in his mouth.

6. As a practical matter, this source of possible inaccuracy may no longer arise under the municipal ordinance. As noted in note 1, Anchorage's driving while intoxicated ordinances originally phrased the 0.10 standard only in terms of blood alcohol concentrations. Under that statutory scheme, a breathalyzer was used which tested breath in order to determine breath alcohol concentrations, and then a conversion ratio was applied which translated that result into blood alcohol concentrations. Now, however, following amendments to the ordinances which phrase the 0.10 standard in terms of both blood and breath alcohol concentrations, the translation from breath to blood alcohol levels does not need to be made. Accordingly, complaints now charge in terms of breath alcohol and the issue of inaccurate conversions from breath to blood alcohol levels does not arise.

7. We note that the expert testimony indicated that many of the sources of breathalyzer inaccuracy are likely to work toward the subject's advantage by yielding artificially low results. For instance, while the breath to blood ratio employed by the breathalyzer may yield improperly high results in 14 percent of the cases, in the other 86 percent of the cases the breathalyzer either yields an accurate result or it errs in the subject's favor by understating the actual blood alcohol concentration. Similarly, the experts testified that the test operator may err by failing to test the subject's deep lung breath. In such an instance the test result is likely to be an inaccurately low reflection of the true breath alcohol concentrations present at the time.

8. The *Keel* court considered the effect of AS 28.35.033(d) which provides:

To be considered valid under the provisions of this section the chemical analysis of the person's breath shall have been performed according to methods approved by the Department of Health and Social Services. The Department of Health and Social Services is

other evidence, may be subject to attack and disproof. Even after the admission of the breathalyzer test results, the burden is still upon the municipality to convince the jury that the breathalyzer test is accurate and that the defendant's blood or breath alcohol was above the prohibited level at the time of driving. Should the defendant have reason to believe that the test results inaccurately reflect his actual blood or breath alcohol concentrations, he can adequately confront the test through the usual tools which he has at his disposal in confronting any witness or evidence. He can rely on the fact that the municipality has the burden of proof, he can rely on cross examination, or he can present evidence on his own. *See Denison v. Anchorage*, 630 P.2d 1001 (Alaska App.1981).[9] We conclude, therefore, that the appellants' right to cross examine the evidence against them has not been infringed. *See Commonwealth v. Arizini*, 277 Pa.Super. 27, 419 A.2d 643, 650 (1980); *Slagle v. State*, 570 S.W.2d 916, 919 (Tex.Cr.App.1978).

■ In a related point, appellants contend that AMC 9.28.030(A)[10] creates an unconstitutional presumption. Under that or-

authorized to approve satisfactory techniques, methods, and standards of training necessary to ascertain the qualifications of individuals to conduct the analysis. If it is established at trial that a chemical analysis of breath was performed according to approved methods by a person trained according to techniques, methods and standards of training approved by the Department of Health and Social Services, there is a presumption that the test results are valid and further foundation for introduction of the evidence is unnecessary.

We believe the court viewed this statutory provision as essentially foundational in nature when it held:

That statute ... merely defines the elements that must be proved before breathalyzer test results may be admitted into evidence; it does not make those results unassailable. Indeed, the statute creates only a *presumption* of the test's validity. . . .

*Keel v. State*, 609 P.2d at 557 (emphasis in original). We believe that the "presumption that the test results are valid" means only that if the Department of Health and Social Services' regulations are followed there is sufficient evidence to admit the test results into evidence. The weight to be given the breathalyzer evidence is strictly a factual matter for the jury.

dinance, a basic element of the charge is that the defendants' blood or breath alcohol concentration exceeded 0.10 at the time of driving. Appellants argue that the ordinance creates a presumption that the blood or breath alcohol concentration at the time a defendant is given the breathalyzer test is the same as it was at the time of driving. We disagree. We do not interpret the ordinance as requiring the inference that the blood or breath alcohol concentrations existing at the time of driving are the same as those indicated by a breathalyzer test administered at some later time. However, the breathalyzer test result is evidence which is relevant to show the amount of alcohol actually in the subject's blood or breath at the time of driving. Under this ordinance, we believe the prosecution has the burden of making the connection between the later test and the alcohol level at the time of driving. Whether the prosecution successfully makes this connection is ultimately a question for the finder of fact. We therefore reject the appellants' claim that the ordinance creates an unconstitutional presumption.

These cases are REVERSED.

Under the municipality's scheme of ordinances, AMC 9.28.023(D) (formerly AMC 9.28.-030(D)) establishes the foundational requirements for introduction of breathalyzer test results. Aside from the omission of the second sentence of AS 28.35.033(d), the ordinance is identical to that statute. Given this similarity, we view the ordinance just as the supreme court viewed the statute in *Keel*. All the ordinance does is let the prosecution introduce the breathalyzer test results into evidence; it does not insulate those results from an attack upon their validity.

9. The appellants claim that their fifth amendment right to remain silent is violated because they may be required to testify to dispute the breathalyzer results. They claim this is particularly true if their individual alcohol absorption rates or elimination rates may influence the breathalyzer result. We reject this contention. Any time evidence is introduced against a defendant, he may be faced with a difficult decision whether to exercise his right to remain silent or to rebut the evidence. *Evans v. State*, 645 P.2d 155 (Alaska 1982).

10. Former AMC 9.28.030(A) and its amendment are set out in note 1.